# In the Matter of the Final Account of LOUISA J. BESONDY, Guardian, deceased.

## August 12, 1884.

**Maintenance of Child—Remarriage of Mother—Liability of Step-Father.**—A widow upon her remarriage, is not liable for the support of her minor child by a former husband, but is entitled to have his income applied thereto. And a step-father is not bound to maintain the children of his wife by a former marriage, unless he voluntarily assumes the relation of parent, and receives them into his family under circumstances such as to raise a presumption that he has undertaken to support them gratuitously.

**Guardian and Ward—Allowance for Maintenance.**—A guardian may be allowed for necessary expenses incurred in the support and maintenance of his minor ward, though no previous order has been made therefor by the court.

**Same—Allowance for Past Maintenance.**—So an allowance for the past maintenance of an infant may be made in favor of a parent, or other person not bound for the support of such infant, for expenditures necessarily incurred therefor previous to the appointment of a guardian.

**Supreme Court—Points and Authorities.**—Points cannot be made upon the argument which are not contained in the copy served upon the opposite party under rule 11 of this court.

The administrator of Louisa J. Besondy, who died in May, 1874, filed in the probate court of Olmsted county, on May 15, 1882, an account of money received by his intestate as guardian of her son, John W. Perry, the account showing no expenditures. The guardian having died insolvent, the surety on her bond was admitted as a party to the accounting. The court, in adjusting the account, allowed the expenditures made by the guardian during the guardianship (January 29, 1870, to May, 1874,) and adjudged a balance of $808.70 to be due the ward. The administrator and the surety appealed, on questions of law and fact, to the district court for the same county, *Start*, J., presiding, and thereupon certain issues were tried by a jury and others by the court, the facts thus found being stated in the opinion. Judgment was thereupon entered in favor of Perry and

v.32—25

against the administrator and the surety, for $645.40, the balance found due from the guardian at the time of her death (May 2, 1874,) with interest to September 8, 1883, making $1,067.80, and for costs, and from this judgment the defendants therein appeal.

*Chas. C. Willson,* for appellants.

*Jones & Gove,* for respondent.

VANDERBURGH, J. Upon the trial in the district court, upon appeal from the probate court, it appeared that the father of the respondent John W. Perry died in 1863, in the service of the United States, leaving him surviving the respondent, an infant of the age of three years, and his widow, Louisa J. Perry, (who, in September, 1864, was married to Charles Besondy,) and thereupon the respondent became entitled to a pension from the United States government, which was duly drawn for him and retained by one Cundiff, acting for him until the appointment of his mother as guardian, which was duly made by the probate court of Olmsted county on the 29th day of January, 1870, and thereafter she drew the pension money accruing to him until her death, May 2, 1874, and also recovered from Cundiff the money received by him therefor, amounting in all to the sum of $1,138.40. As respects the support and maintenance of the respondent, it appears that, soon after the second marriage of his mother, it was arranged between her and Besondy that he should live with them and be supported as one of the family, and that the pension money should be applied and used in payment therefor. He accordingly lived with them, and was so supported as one of the family, both before and after her appointment as guardian, until her death. The reasonable value of his maintenance to the time of her appointment as guardian was found to have been the sum of $772.75. In adjusting the account of the administrator of the guardian with the respondent, the court finally rejected the claim for the support of the ward prior to the appointment of the guardian, but allowed the amount claimed and found to have been necessarily incurred for his subsequent maintenance, and thereupon found the respondent entitled to a balance, on account of pension money received by her, of $645.40, with interest from the date of her death.

The question here to be determined is whether the guardian should

also be credited with the amount found to be the reasonable value of the maintenance of the respondent prior to the date of her appointment. The respondent appears to have occupied the same relation to his mother and step-father before as after her appointment. The arrangement made with the step-father, though invalid as a contract, is sufficient to rebut the presumption that he took the child into his family to support *in loco parentis*, and on account of his tender years he could render no service in return for such support. The obligation of parents to support their minor children having a separate income is thus summarily stated: "The father is bound to support his minor children if he be of ability, even though they have property of their own; but this obligation in such a case does not extend to the mother." 2 Kent, Comm. 191. In other words, the rule is not so rigorous in the case of the mother; and if the child has property, the mother is not bound to provide for its maintenance where the father would be. 1 Parsons on Contracts, 309. And a widow, upon her marriage to a second husband, is not liable for the support of her minor child, but is entitled to have his income applied thereto. Pub. St. (1858) *c.* 15, § 2; Gen. St. 1878, *c.* 15, § 2; Willard, Eq. Jur. 629; *Wilkes* v. *Rogers*, 6 John. 566, 594. And a step-father is, of course, not bound to maintain the children of his wife by a former husband. But if he voluntarily assume the parental relation, and receives them into his family under circumstances such as to raise a presumption that he has undertaken to support them gratuitously, he cannot afterwards claim compensation for their support.

We think it must be admitted that neither Besondy nor his wife were legally bound to support the respondent during these years, and it is quite clear that they furnished such support under the circumstances with the expectation of being reimbursed out of his income, and not as a gratuity. That such application of the bounty of the government, which was doubtless intended for such purposes, was proper in this case, the court must have considered in its allowance of the amount found due for past maintenance, covering the time of the guardianship. But why should the line be drawn at that point, and the account for expenses theretofore incurred be rejected? There is no difference in the equitable character of these claims, and we do

not think the law recognizes any.   No such distinction was recog-
nized by the court of chancery, which exercised jurisdiction in such
cases.   In this state the jurisdiction exercised formerly by the court of
chancery, as respects the care of infants and their estates, and for the
appointment and supervision of guardians, belongs to the probate
court.   *State* v. *Ueland*, 30 Minn. 277; Willard, Eq. Jur. 623, 624.
And we think there is no more reason why, in a meritorious case, an ap-
pointment as guardian should necessarily precede the necessary ex-
penditures in behalf of an infant by a parent or other person who is not
lawfully bound for his support, in order to make them a proper charge
upon his estate, than that such person should, under the chancery
jurisdiction, have been compelled to have first brought suit to obtain
the proper order or direction of the court in the premises; and upon
this point Chancellor Kent, in *Re Bostwick*, 4 John. Ch. 100, 105,
says:  Any other rule "would lead to great inconvenience, for, though
the wants of an infant might be ever so pressing, he could not receive
any maintenance (charity excepted) without the expense of a suit and
reference to a master."

Though it is doubtless the safer rule, when practicable, that a guard-
ian should first be appointed, and a preliminary order obtained, yet
it is not indispensable.   The courts are not controlled by these for-
malities, but consider especially the welfare and interest of the child,
rather than the accumulation of his income.   And the rule permit-
ting an allowance for past maintenance in any case has this safe-
guard, in that, whatever amount the parent or other person may have
expended for such purpose, the court must inquire into the facts, and
allow only such sums as are reasonable and proper under the circum-
stances.   The claim must be limited to necessary expenditures.   *Bond*
v. *Lockwood*, 33 Ill. 212.   It is well settled that a guardian may sup-
port his ward without any order of court, and all payments necessa-
rily made for such purpose will be allowed him.   And, in like man-
ner, any one in possession of the infant's property, or a stranger,
may maintain him, and be allowed therefor such sum as can be
shown to be reasonable and proper.   Macpherson on Infants (Law
Lib. N. S.) 213; *Bond* v. *Lockwood, supra.*   As before intimated,
the law shows special favor to the mother, and her application for

past maintenance will be granted in cases where that of a father would not be listened to. This, we apprehend, grows out of her naturally dependent position, and of the consequent reluctance of the courts to encroach upon her estate. We do not, however, undertake to say that her affirmative application for past maintenance will in all cases be granted when the child has property of his own, though his support was not intended to be a gratuity. The circumstances of the case might be such as to render it altogether inequitable. Here, however, there is no suggestion that the claim is not equitable, or that the mother had a sufficient estate of her own; but the record, we think, warrants a contrary inference. The courts are not, ordinarily, careful to require of a mother who remains unmarried, as in the case of a father, that a special case be made, showing the inadequacy of her own means, and the necessity of an allowance for that reason. Much less would such a showing be required of a mother who was remarried, and ceased to be liable for the infant's support. Macpherson on Infants, 224, and cases; *Bruin* v. *Knott*, 12 Sim. 436; *Haley* v. *Bannister*, 4 Madd. 275; Schouler, Dom. Rel. (3d Ed.) § 239; Willard, Eq. Jur. 639; *Mowbry* v. *Mowbry*, 64 Ill. 383. Where any question is made as to the good faith, or amount or equity of the claim, the investigation will naturally develop into an inquiry into all the facts and circumstances material to a just determination of the case. *In re Cottrell's Estate*, L. R. 12 Eq. Cas. 566.

We are unable, therefore to discover any good reason why the administrator should not be entitled to be allowed for the maintenance of respondent, as well before as subsequent to Mrs. Besondy's appointment as guardian, by way of set-off against his claim. The money was received by Besondy and his wife, he joining in the receipts therefor, and its equivalent and more had been expended by them for his support. Though Besondy's recollection is faulty as to the amount actually received by him, and the cost of collecting it, and the court does not fix it, yet he admits he must have received most of it by his wife's order, and he seems to have controlled its expenditure. However, if there is any question as to the net amount actually received by Besondy, it may be determined in another trial.

In the printed argument of appellants' counsel, some points are

made which were not included in those previously served upon respondent's counsel under rule 11 of this court. They are not, therefore, considered. The respondent is in all cases entitled to rely upon the copy served as containing all the points which appellant will make upon the argument.

Judgment reversed, and new trial ordered.