# Englehardt *v.* Yung's Heirs.

*Final Settlement of Accounts of Deceased Administrator.*

1. *Parent and child ; duty of support and education by father, or by surviving mother.*—The law imposes on the father, primarily, the duty and obligation to maintain and educate his minor children in a manner commensurate with his means, although they may have property of their own ; and if his means are not sufficient to support and educate them according to their estate and condition, will supplement the insufficiency by an appropriation out of their property ; but, on the death of the father, such duty and obligation does not rest on the surviving mother, if the child has an estate of its own, or is able to earn a livelihood.

2. *Gratuitous support of child by surviving mother.*—A mother, surviving the father, may support her child gratuitously, though not bound to do so ; and having done so, she can not afterwards demand and receive compensation out of its estate ; but, when she has the control and management of the child's estate, as guardian or administratrix, the support and education of the child are presumptively a charge on that estate, and an intention on her part to assume it gratuitously must be clearly shown ; and the fact that she kept no account against the child is not sufficient to raise the presumption of an intended gratuity, when it also appears that she kept no accounts with the estate of the father, of which she was administratrix.

3. *Step-father's duty and rights.*—On the second marriage of the surviving mother. the step-father is neither bound to maintain her children, nor entitled to their custody or earnings ; and though he may voluntarily place himself *in loco parentis* towards them, by admitting them into his family, and treating them as members thereof, thereby assuming the obligation and acquiring the rights of a natural parent, his intention to do so is not to be hastily inferred from slight circumstances.

4. *Application of above principles to case at bar.*—In this case, the surviving mother had a separate estate of about $13,000, from which she derived an annual income of $800 ; and her husband's entire estate devolved on their four children, he dying intestate. Her income was not sufficient to support herself and her children, and to educate them according to their estate and condition ; but she continued to reside, with her children, in the same dwelling-house, until her second marriage, when her husband went to reside with them, and kept up the family relation as it then existed until her death, a period of three or four years. She qualified as administratrix of the estate of her first husband, but no guardian was appointed for the children ; and she kept no accounts with either the children or the estate. *Held,* on the settlement of her administration by her surviving husband as executor, that a credit should be allowed, to a reasonable and proper amount, for the maintenance and education of the children, not exceeding the income of their property, and deducting the value of any services they may have rendered.

5. *Homestead exemption for widow and children.*—A house and lot bought by the intestate a short time before his death, with the declared intention to repair and improve it, and to make it a permanent residence, may be regarded as his homestead, and exempt as such from the pay-

[Engelhardt v. Yung's Heirs.]

ment of debts for the benefit of his widow and children, notwithstanding his death before the consummation of his purposes.

6. *Same; rents, repairs and improvements, by widow and administratrix.*—The widow having removed into the house, with her minor children, repaired and improved it, and continued to occupy it as the family residence until her death; *held*, on settlement of her accounts as administratrix, that no rents should be charged against her, and that the cost of the repairs and improvements should be divided between her and the estate, four-fifths thereof being charged against the estate.

7. *Liability of administrator for interest.*—It is the duty of an administrator to make settlement and distribution, so soon as the estate is in proper condition; and if he neglects to do so, he is liable for interest on the funds in his hands, although he may have kept them on deposit unemployed.

8. *Same.*—Where all the debts are shown to have been paid within six months after the grant of administration, and no special reasons are shown for continuing the administration beyond the period allowed for creditors to file their claims, six months after the expiration of that period is a sufficient time within which to make preparations for a final settlement, and interest should be charged from that time.

9. *Apprenticeship of minor.*—An instrument of writing under seal, by which the surviving mother of a minor child undertakes to bind him out as an apprentice to his paternal uncle, who binds himself to perform for the minor all the duties imposed by statute on the masters of apprentices (Code, § 1735), is not a valid contract of apprenticeship, unless the statutory requirements are complied with, and imposes no legal obligation on the uncle.

APPEAL from the Probate Court of Montgomery.

Tried before the Hon. F. C. RANDOLPH.

In the matter of the settlement of the accounts of Mrs. Louisa Englehardt, as administratrix of the estate of her first husband, John A. Yung, deceased, by her surviving husband, David Englehardt, as the executor of her last will and testament. On the settlement, exceptions were reserved by the executor to several rulings of the court, and by the guardian *ad litem* of the infant heirs and distributees to other rulings; and by consent of parties, indorsed on the transcript, it was agreed that the case should be considered as if each had appealed.

"On the settlement," as the bill of exceptions states, "the proof showed the following facts: John A. Yung died on the 16th October, 1873, in the city of Montgomery, the place of his residence, intestate, and leaving a surviving widow, now Mrs. Louisa Englehardt, and four minor children by her, who are still minors. Letters of administration on his estate were duly issued by the Probate Court, in November, 1873, to the said Louisa; and she entered upon the administration of said estate, and continued to administer the same until her death, which occurred on April 16th, 1878. On the 10th November, 1875, the said Louisa intermarried with David Englehardt, with whom she and her said children resided, up to the day of her death, in the city of Montgomery; and said children have ever since resided with him, in said city. By the last will and testa-

ment of the said Louisa, she appointed said David Englehardt as her executor; and letters testamentary having been duly issued to him by said Probate Court, he has been acting as such up to the present time. No administration on the estate of said Yung was ever had after the death of said Louisa; but, on this settlement, an administrator *ad litem* was appointed to represent said estate, and a guardian *ad litem* to represent said minor children. The said Louisa had no children by her marriage with said Englehardt.

"On filing his accounts as executor, for a settlement of said Louisa's administration, said Englehardt also filed separate accounts in her favor, for the support, maintenance and education of said minor children, during the time of her administration, as follows: for Catherine Yung, $972; for John A. Yung, $648; for Augustus Yung, $864; and for Louisa C. Yung, $540. Said amounts so furnished by her, covering a period of four and one-half years, were proved to be correct and reasonable. But the guardian *ad litem* objected to the allowance of said accounts, on the ground that the proof showed said Louisa (their mother) owned a separate estate of about $13,000, from which she derived an annual income of about $800 (but the proof showed, also, that said minor children together owned property worth about $20,000, which then consisted of $7,000 in money in the hands of said administratrix, and $13,000 in realty, which was also in her possession, and all of which was derived from their father's estate; that said administratrix paid, out of said $7,000, about $3,819.55, and $269 taxes for 1873; and that the income from said realty, including $400 *per annum* as rent of the residence occupied by her and said children, was about $600 *per annum*); and on the ground that it was the duty of the said Louisa to support her children out of her property; that she had kept no book accounts, and made no charges against them; and because the evidence did not show that she ever intended to charge them anything for board and maintenance, and, for aught that appears in the evidence, she did not intend to charge them, but did intend to support them out of her own estate. It was shown, also, that said Louisa kept no book accounts with said estate, or with any one else, but merely kept her vouchers for money paid out; and that she was a woman of but little business qualifications. The court sustained the objections of the guardian *ad litem*, and refused to allow the accounts for said minors." The executor excepted to this ruling of the court, and he here assigns it as error.

"The executor claimed a credit of $1,859.96 on general account, in various items for which he had vouchers, and which were proved to be for moneys expended by his testratrix in

[Engelhardt v. Yung's Heirs.]

making an addition of three rooms, and other repairs, including grading yard, introducing water-works, bath-tub, gas and gas fixtures, to and in a certain house in Montgomery, which had been bought by said Yung shortly before his death, and which, as the proof showed, he purchased with the intention of improving for the use of himself and family, and as their permanent residence; but he died before making such improvements. The proof showed that said house was too small for the use of the said family and was greatly in need of repairs; and that said repairs and additions were necessary to the comfort and convenience of the family. It was shown, also, that said vouchers were for money paid out by said administratrix for making said improvements, and for putting water, gas, &c., into said house; that the prices and amounts so paid by her were reasonable and necessary for making the same; that she and her said children took possession of said house when completed, and occupied it, with her second husband, as a residence, until her death; and that, since her death, said Engelhardt and the children have continued to occupy it as a residence. The guardian *ad litem* objected to the allowance of the credit claimed, and to each voucher and item separately. The court allowed $1,000 of said amount as a credit, to which the guardian *ad litem* excepted; and disallowed $859.96, to which the executor excepted." Each of these rulings is here assigned as error by the party excepting.

"The court struck out of the account as filed, on motion of the executor, the item of $1,800 for rent of said residence, being for four years and a half, at $400 *per annum*; to which the guardian *ad litem* excepted," and which he here assigns as error.

"The guardian *ad litem* moved to charge the administratrix with interest on the balance in her hands belonging to said estate, from the —— day of November, 1875, which was two years after her appointment, up to the date of this settlement, amounting to $1,549. The evidence showed that all the debts of said John Yung had been paid within six months after such appointment; and it was also shown that said administratrix had not used any of the funds of said estate for her own benefit, but had kept all the moneys of the estate in hand, to her credit as administratrix; that at the time of her death there was on deposit, to her credit as administratrix, a balance of $5,000; that she had used $2,500 of her own money in the administration of said estate, and that no administrator *de bonis non* on the estate of said Yung was ever appointed. The court sustained the motion of the guardian *ad litem*, and charged said sum against said administratrix." The executor excepted to this ruling, and he here assigns it as error.

The executor claimed a credit in favor of the administratrix

[Engelhardt v. Yung's Heirs.]

for $864, "for boarding, clothing, tuition and care, for and during four and one-half years, of one Rudolph Yung, a minor, the only child of a deceased brother of said John A Yung, who had left no estate at his death ;" and in support of this credit as claimed, he read to the court a writing under seal executed by said John A. Yung and Mrs. Amelia Yung, the mother of said Rudolph, which was in these words : "*This indenture,* made and entered into this 31st July, 1872, by and between Amelia Yung, party of the first part, and John A. Yung, party of the second part, witnesseth, that the said Amelia Yung has this day assigned and bound, and does by these presents assign and bind her infant son, Rudolph Yung, who is now in his ninth year, and whose father is dead, unto the said John Yung as his apprentice ; him to faithfully serve, and all his lawful commands well and truly to obey, from this day forth, until the said Rudolph shall have completed the 21st year of his age, to-wit, on the 14th April, 1885 ; at which time these articles of apprenticeship shall cease. And the said John Yung does hereby covenant and bind himself to provide a sufficiency of good and wholesome provisions for his said apprentice ; to furnish him at all times with all necessary clothing, washing and lodging, and with medicines and medical attendance in case of sickness; to treat him at all times with kindness and humanity ; to instruct him in some useful trade, business, or occupation ; to have him taught to read, write, and cipher as far as the rule of Proportion ; and, at the expiration of his term of apprenticeship, to furnish him with two complete new suits of clothing. In witness whereof," &c. "It was proved," in reference to his claim of credit, "that said Rudolph was nine years old at the date of this contract, and was the only child of a deceased brother of said John Yung, who had left no estate ; that said John Yung took said Rudolph into his family, kept and took care of him, and treated him in every way as one of his own sons, up to the time of the death of said John Yung ; that the said Louisa, after his death, still kept the said Rudolph in her family, took care of him, boarded, clothed, educated, and treated him in the same way that she did her own sons ; that said Rudolph was of no benefit whatever to her, owing to his youthful age ; and that said account, as charged, was reasonable." The guardian *ad litem* objected to the allowance of this charge as asked, on these grounds : 1st, that the claim evidenced by said writing was not shown to have been presented to the administratrix within eighteen months after her appointment, and was therefore barred by the statute of non-claim ; 2d, that the contract had never been approved by the court as articles of apprenticeship ; 3d, that the relation of master and apprentice, if created by said writing, was dissolved by the death of said John

[Engelhardt v. Yung's Heirs.]

Yung. The court sustained the objections, and refused to allow the credit as asked ; to which ruling the executor excepted, and he here assigns it as error.

SAYRE & GRAVES, for the executor.

LESTER C. SMITH, for the heirs and distributees.

CLOPTON, J.—John A. Yung died intestate, in October, 1873, leaving a widow and four minor children. Administration of his estate was granted to the widow, and she and her children resided together in the dwelling-house purchased by the intestate, until her marriage with appellant, in November, 1875. After the marriage, the step-father, mother, and children, constituting one family, continued to reside in the same house until her death. She died in April, 1878, leaving a will, by which the appellant was appointed executor of her estate. On the final settlement of her administration of her first husband's estate, her executor asked to be allowed a credit for the maintenance of the children during the period of her administration; which was disallowed by the Probate Court.

1-2. The law, following the instincts and commands of nature, imposes on the father, primarily, the duty and obligation to maintain and educate his minor children, in a manner commensurate with his means, even though they may have property of their own. When the father's means are insufficient to support and educate his children, suitably to their estate and condition, the law will supplement the insufficiency by an appropriation of their property. The obligation to maintain, and the right to services, in the case of father and child, do not depend upon the will of either, except that the father may emancipate the minor child. The obligation of the mother, on the death of the father, is not co-extensive. The natural obligation exists; and it may be a legal duty also, as to strangers, and so far as to prevent the child from becoming a charge on the public. Where the mother has the ability, and her infant child is without means, and unable to earn a maintenance, the duty and obligation of support devolve on her; but the law does not impose the duty, if the child has an estate, or is able to earn a livelihood.—*Mowbry v. Mowbry*, 64 Ill. 383; *Wilkes v. Rogers*, 6 John. 566. The distinction between the duty and obligation of the father and mother is, that the father, if of ability, is bound to maintain and educate his minor child, irrespective of any estate of the child; while the mother's duty and obligation are measured and limited by the ability or sufficiency of the estate of the child. If she, as guardian, or administratrix, or in any other fiduciary capacity,

has the control and management of the child's property, the presumption, on a subsequent settlement between them, will be, in the absence of any manifest intention otherwise, that the support and education of the child are a charge on such property. A mother may support her child gratuitously; and when done without any intention or expectation of being recompensed, she can not, on a change of purpose or inclination, demand and receive compensation for a previous gratuitous maintenance. Such intention may be shown by circumstances; but, whether proved by positive or circumstantial evidence, it must clearly appear, if the child has an estate.

3. Should the mother subsequently marry, she ceases to have control and management of her own property, and her duty and obligation also cease. A step-father is entitled neither to the custody nor to the earnings of the children of the wife by a former husband, and there is no reciprocal obligation to maintain them. He may, however, take them as members of his family, adopt them as his children, and place himself *in loco parentis.*— *Williams v. Hutchinson*, 3 N. Y. 312; 2 Kent's Com. 193. In *Brush v. Blanchard*, 18 Ill. 46, it is said: "He may, however, by admitting them into his family, and treating them as members thereof, voluntarily assume the relation of parent. Where this is done, the step-father stands in the place of natural parent, and the reciprocal rights, obligations, and duties of parent and child attach, and continue so long as this mutually assumed relation continues; and the step-child, in such cases, is not entitled to recover for services rendered, nor is the step-father entitled to pay for support." This is, also, to a great extent, a question of intention; and such intention should not be slightly nor hastily inferred, and from such circumstances as to operate to deter step-fathers, by the apprehension of being burdened beyond their ability, from continuing and keeping his wife's children in such relation with their mother, as to receive her constant watchfulness, care, and training, and the beneficial enjoyment of her companionship.

4. Mrs. Englehardt, formerly Mrs. Yung, had a separate estate of about $13,000 in value, which yielded an annual income of $800. This income was insufficient to support herself and her four children, and educate the children according to their estate and condition. It is not to be presumed, under these circumstances, that it was her intention to bestow a gratuitous support and education, which would require the expenditure of her entire income, and also infringe upon her capital, leaving the children's estate untouched and to accumulate. There was no guardian, to whom she could declare an intention to charge them; and keeping no accounts with them,

[Englehardt v. Yung's Heirs.]

when she kept none with the estate as administratrix, is not sufficient to create the presumption of a gratuity.—*Stewart v. Lewis*, 16 Ala. 734; *Whipple v. Dow*, 2 Mass. 415. The property of the mother was her statutory separate estate, during the life of her first husband. She was not entitled to, and did not receive any part of his estate; the children inherited the entire property. On the second marriage, the step-father went to reside in the house, where the mother and children had previously resided, continuing and preserving the family relations, as they had previously existed. It may be, and probably is true, that the intention and purpose of the mother were to use the combined income of herself and children for their mutual and united benefit. On the facts shown by the record, a credit should have been allowed, to a reasonable and proper amount, for the maintenance and education of the children, deducting therefrom the value of any services they may have rendered; the credit, in no event, to exceed the income of their property. No credit for the support of the children after the death of the administratrix can be allowed on this settlement, as her administration then terminated.

5. The lot and house where the family resided after the death of the intestate, was purchased by him with the intention, and for the purpose of improving and repairing, and making it a permanent residence; but he was prevented by death from consummating his purpose. "Preparation to use, coupled with a *bona fide* intention so to do, frequently takes the place of actual use."—Thomp. on Homest. Ex. § 192. In *Blum v. Carter*, 63 Ala. 235, it is said: "Guided by these principles, we hold that, to constitute a valid claim of homestead, there must be an actual occupancy in fact, or a clearly defined intention of present residence and actual occupation, delayed only by the time necessary to effect removal, or to complete needed repairs, or a dwelling-house in process of construction." Under the circumstances, the premises may be regarded, in legal meaning and contemplation, as the homestead of the intestate, and, as such, exempt from the payment of debts for the benefit of the widow and children.

6. After the death of the intestate, the administratrix made the needed and proper improvements and repairs, and the family thereafter occupied the dwelling. The improvements and repairs were necessary for the preservation of the property, and rendered it permanently more beneficial and valuable to the heirs. The widow was authorized to occupy the homestead, until it could be ascertained whether or not it was necessary to sell the real estate for the payment of debts. The improvements and repairs were for their common enjoyment, but resulted to the ultimate and permanent benefit of the heirs. Un-

[Englehardt v. Yung's Heirs.]

der these circumstances, it is equitable to make each pay in proportion to the benefit received. The estate should be charged with four-fifths of the cost of the necessary and reasonable improvements and repairs, and no rent charged for occupancy during the time of the widow's administration.—*Benagh v. Turrentine*, 60 Ala. 557; *Henderson v. Simmons*, 33 Ala. 291.

7–8. As to the liability of the personal representative for interest, the rulings of this court have settled the doctrine, that an administrator who delays, without sufficient cause, settlement and distribution for an unreasonable time, is liable for interest, though he may have kept the money unemployed and in safe deposit. The duty of the administrator is to make settlement and distribution, whenever the estate is in proper condition, which duty is as obligatory as any other duty imposed by law. *Clark v. Knox*, 70 Ala. 607; *Clark v. Hughes*, 71 Ala. 163. It appears that all the debts of the estate were paid within six months after the appointment of the administratrix, and there was money on deposit. No reasons are shown why the administration should have been continued after the expiration of the time allowed creditors to present their claims. Six months thereafter was sufficient time to allow the administratrix, during which to make preparations for a final settlement. We find no error in the ruling of the court charging the administratrix with interest from November, 1875. The administratrix, however, is entitled to a credit for any disbursements made by her, as of the time they were made; and the aggregate amount of the disbursements made previous to November, 1875, should be deducted from the funds in the hands of the administratrix, and interest charged on the balance.

9. The charge for the maintenance and support of Rudolph Yung was properly disallowed. He was not apprenticed as required by the statutes; and the written instrument between his mother and the intestate is not a binding contract, but may be regarded as a declaration of intention to bestow gratuitous bounty.

Reversed and remanded.