OLSEN and another, Respondents, vs. THOMPSON, Guardian, Appellant.

*October 14 — November 5, 1890.*

GUARDIANS: FINAL ACCOUNTING. *(1–3) Charges for support of wards: Evidence. (4) Orders on annual accounts: Estoppel: Evidence. (5) Interest.*

1. Charges by a guardian of minor children for the support of his wards prior to his appointment as such guardian are only allowed when there are the strongest equities in favor thereof.

2. Minor children having no estate were taken into the family of their mother's brother-in-law. Two years later a small amount of money was left them by their grandfather, and the said brother-in-law was appointed their guardian. Upon evidence tending to show, among other things, that when the children entered his family it was understood between him and their mother that no charge was to be made for their board, it is *held* that charges by said guardian for their board prior to his appointment were properly disallowed.

3. Said guardian having been allowed, on his final accounting, for the board of his wards after his appointment, at the rate charged therefor in a previous account rendered by him, this court declines, upon the evidence, to hold such allowance insufficient.

4. Orders made by the county court upon the examination of annual accounts rendered by a guardian are not an estoppel against him at the final accounting (County Court Rule X, sec. 10), but are admissible in evidence, in connection with said accounts, to show the character of the claims made by him.

5. A guardian is chargeable with interest on the balance of the estate in his hands.

APPEAL from the Circuit Court for *Outagamie* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The facts in this case are substantially as follows: In 1861, Mathias Olsen died intestate, leaving the respondents, his children. *Julia* was then one year old, and *Martha* less than two years old. Mathias left no estate, and no administrator of his estate was appointed. On October 30, 1866, it was known that the grandfather of the respondents had left

them a small sum of money, and on that day the appellant was duly appointed guardian of said minor children. Afterwards, in 1867, as such guardian, he received the money left by their grandfather, amounting to the sum of about $440. In 1869 the appellant filed in the office of the county judge an account as guardian, and again in 1872 he filed another account in said county court. The county court rejected and disallowed all the items of credit in said accounts so filed, excepting the sum of $12.22. No appeals were taken from the action of the county court in regard to these accounts by the appellant, and perhaps no appeal was allowable, or necessary to protect the rights of either party. Nothing further was done in regard to the guardianship of the appellant until June, 1886, when, upon the application of the respondents, the county court of Brown county cited the appellant to appear before that court and render a final account of his guardianship. In pursuance of said citation the appellant appeared before said county court, and rendered an account as such guardian, and after hearing the evidence of the respective parties the county court made the following order and judgment therein:

" On the 1st day of June, 1886, at a term of the county court, the said minors being represented by their attorneys, Messrs. Hudd & Wigman, and the guardian by his attorney, H. J. Huntington, after hearing proofs and allegations, the court found (1) that the guardian was duly appointed, and accepted the trust by giving bond in the sum of five hundred dollars, with Casper Hansen as surety, which bond was accepted and approved October 30, 1866; (2) that on the 1st day of May, 1869, *Thompson*, as guardian, presented to said court his account, which was on the 7th day of February, 1870, duly examined and passed on by the court; (3) that said *Julia* arrived at full age January 23, 1881, and said *Martha*, July 28, 1882, when they each became entitled to a full accounting by said guardian,— and ordered and

adjudged that *Thompson* render a full account of his guardianship on or before June 15, 1886, and that the same be for examination and settlement at 11 o'clock A. M. on said day, and that five days' notice of same be given him."

On June 15, 1886, at a term of the said county court, an order was entered reciting the appearance of both parties, the presence and examination of the guardian, and the following findings: *First.* That the amount properly chargeable to said guardian July 28, 1882, the date at which the youngest ward came of age, was $767.15; *second,* that the amount properly allowed and credited to him as of the date last aforesaid is $252.19; *third,* that the residue in his hands consists of money amounting to $514.96, as per Schedule A, hereto annexed; *fourth,* that the said *Julia* and the said *Martha* are entitled to said residue. Wherefore it is ordered and adjudged that the account of the guardian, as stated herein, be, and the same is hereby, approved and allowed. That the residue, $514.96, be assigned as follows: To *Julia,* $257.48, and to *Martha,* $257.48, each of said sums to bear interest from July 28, 1882, at 7 % per annum until paid. And that on payment of said sums the guardian be discharged.

From this judgment the guardian appealed to the circuit court of Brown county. The case was then removed to Outagamie county, and was there retried before a referee appointed by the court to hear, try and determine the same. The referee made his report and judgment, and thereby found the same amount due from the guardian to the respondents as was found by the county court.[1] The

---

[1] The findings of fact by the referee were substantially as follows: (1) That the guardian received, May 28, 1867, $444 belonging to the children; (2) that a credit should be allowed him, as per the order of the county judge, February 7, 1870, $12.22, and his five per cent. commission, $22.20 — total $34.42, leaving a balance in his hands of $409.58; (3) that the interest on said balance to July 28, 1882, when the youngest ward became of age, is $357.57; (4) that the total amount chargeable against

circuit judge affirmed the finding and judgment of the referee in all respects, and from the judgment of the circuit court the guardian appeals to this court.

*F. C. Cady*, for the appellant.

. For the respondent there was a brief by *Hudd & Wigman*, and oral argument by *T. R. Hudd*.

TAYLOR, J.    The only matter in controversy between the parties in this case is whether the guardian should have been allowed more than the sum of $96 for board of said infant children while they lived with him, from 1864 to 1868. The evidence shows that the children lived in the family of the guardian from August 10, 1864, to September 4, 1868. In his account rendered to the county court the appellant made a charge as follows: " By expenses and services in caring for, clothing, and boarding said minors from August 10, 1864, to September 4, 1868, at $1 per week for each, 211½ weeks, $423." This item of the account was contested by the respondents, and he was allowed but $96 on the same, being the sum of fifty cents per week for each of the minors from the date of his appointment, October 30, 1866, to September 4, 1868, when said minors left the family of the guardian, and returned to their mother, who thereafter cared for them.

The evidence shows that the guardian was the husband of the sister of the mother of the minors, and it tends to show at least that, when the children were taken into the family of the guardian, it was understood between the mother and the guardian that there was to be no charge made by him for their board. It also tends to show that

the guardian at that date is $767.15; (5) that the guardian is entitled to the following credits: attorneys' fees, $42.50; board of wards ninety-six weeks at fifty cents per week for each, $96; interest on the last item to July 28, 1882, $83.21; attending court four times, $12.00; commission on $357.57, $17.88 — total credits, $252.19; leaving due from the guardian, July 28, 1882, $514.96.— REP.

he did not furnish them any clothing. The evidence also tends to show that when he was appointed guardian for the purpose of receiving the money left to the infants by their grandfather, the appellant stated to the mother that the interest on the money would clothe and school them so long as they remained with him, and it appears that he neither clothed nor schooled them while they lived in his family. It is urged by the appellant that, if he was entitled to anything for the board of his wards, he was entitled to recover more than was allowed to him, and that he should have been allowed for the board of the children from the time they first came into his family, August 10, 1864, down to the time of his appointment as their guardian, October 30, 1866, as well as from the date of his appointment.

We do not think the facts in this case are of such a character as to justify a court of equity in making any such allowance. It is evident to us that, had the mother supposed any such charge was to be made by her brother-in-law, she never would have consented to his appointment as their guardian for the purpose of receiving the small patrimony left to them by their grandfather, and that she would have found some way of supporting her infant children without applying a large share of it to the payment for their board while living with their uncle, when she had every reason to believe that no charge for board had been intended when they were taken into his family. Such charges for support previous to the guardian's appointment are only allowed when there are the strongest equities in favor thereof. *In re Besondy*, 32 Minn. 385; *Villard v. Robert*, 49 Am. Dec. 654, and cases cited in note on page 660. We find nothing in this case which entitles the guardian to any such allowance.

It is also urged that enough was not allowed for the board during the time he was guardian and while the infants lived with him. That was a question of fact to be deter-

mined by the court below.  The allowance was probably fixed at that amount because the guardian in his account rendered to the county court in 1872 charged at that rate for their board.  Under many of the authorities, no allowance should have been made to the guardian for the support of his wards beyond the annual interest upon the estate in his hands.  See *Villard v. Robert*, 49 Am. Dec. 654, and *Beeler v. Dunn*, 49 Am. Dec. 761, 3 Head, 87.  And when the guardian claims for the board of his infant wards when they are living in his family, without first obtaining an order from the court to use the principal of their estate to pay for such board, he must make a case which appeals strongly to the equity powers of the court.  The learned circuit judge refused to interfere in this case, because he thought he ought not to interfere because the board was furnished without first obtaining an order of the court permitting him to use the principal of the estate for that purpose; and, although we are of the opinion that in a proper case the court might allow for such support out of the body of the estate without first obtaining an order for that purpose, we are not satisfied that the facts in this case would justify such an allowance, and, had the trial court refused to allow anything beyond the interest of the estate in payment for their board in this case, we should have felt constrained to affirm such decision.

While we are of the opinion that the orders of the county court made in this matter were not an estoppel against the defendant in this action, we think they were properly received in evidence for the purpose of showing the character of the claims made by the defendant in regard to this matter.  Whether the decision of the county court allowing or disallowing any items of a guardian's annual account when made and passed upon by said court as required by sec. 3972, R. S., would be conclusive upon the guardian or ward if not appealed from, were it not for sec. 10, Rule X, of the county

court rules, need not be determined. Said sec. 10 of the rules declares that "no order of the court in reference to any annual account of the guardian shall be conclusive upon the final settlement of the guardian's accounts, but upon such final settlement it shall be competent to examine and pass upon all the guardian's accounts subsequent to the time of his appointment." This rule must be held to be an authoritative declaration as to the effect which shall be given to the orders of the county courts made under said sec. 3972. See, also, *Willis v. Fox*, 25 Wis. 646.

There can be no doubt but that the guardian should be charged with interest on the balance of the estate in his hands. *In re Thurston*, 57 Wis. 104.

*By the Court.*— The judgment of the circuit court is affirmed.