IN RE GUARDIANSHIP OF GEORGE SOLTIS AND OTHERS.
ANDREW STEINAR AND ANOTHER, RESPONDENTS.[1]

June 7, 1929.

No. 27,407.

*Alexander Fosmark,* for appellants.

*F. A. Grady,* for respondent Steinar, as guardian, and R. B. Taralseth, his surety.

TAYLOR, C.

In November, 1927, Andrew Steinar filed in the probate court of Polk county his final account as guardian of the estate of George, Luella and John Soltis, minors. The probate court approved and allowed the account. The wards appealed to the district court. That court after an extended hearing affirmed the judgment of the probate court. A further appeal brings the matter before this court.

Andrew Soltis died intestate in April, 1910, leaving as his heirs at law his widow, Susie Soltis, and five children, Nora, Andrew, George,

[1]Reported in 225 N. W. 896.

Luella and John Soltis. He died possessing a farm of 160 acres but no personal property. His estate was duly probated, and the farm was decreed to the widow and children in the proportions prescribed by statute. In July, 1910, Andrew Steinar was appointed guardian of the estate of the children. They had no estate except their respective interests in the land. The two older children are not concerned in this controversy as it involves matters occurring after they became of age. The three younger children were respectively nine, six and three years of age at their father's death. The mother continued to reside on the farm with the children, but rented the farm for one-fourth of the crop from 1910 to 1919 and consumed the proceeds in supporting the family. In 1919 she thought the boys were old enough to do the farm work, and in that season began to operate the farm herself with their aid. She had no farming equipment and went into debt for horses, machinery and other things. In 1921 her creditors were pressing for payment, and an arrangement was made to obtain a loan secured by a mortgage on the farm. To accomplish that purpose, Steinar procured a license from the probate court to sell the interest of the three minor children in the real estate, setting forth as a reason therefor that they were indebted to their mother for care and support in the sum of about $5,000. The sale was made to the mother for the sum of $3,891.14, the appraised value of their interest in the land. It was duly confirmed and a guardian's deed executed to her. The regularity of the proceedings is not questioned. Thereafter the mortgage was duly executed, the two older children who were then of age joining with their mother therein. The entire proceeds of the mortgage were used in paying debts incurred by the mother. Subsequently the mortgage was foreclosed and no redemption was made.

In his final account Steinar reported the sale of the estate of the minors to their mother for the sum of $3,891.14, and claimed credit for that sum as paid to her for their support while they were under the age of 15 years. The minors are now of age. They take the position that it was the duty of their mother to support them while minors; that she was not entitled to payment therefor out

of their estate; and that Steinar as guardian of their estate is liable for the sum of $3,891.14 which he allowed her to retain as payment for such support. Whether he is liable therefor under the circumstances of this case is the sole question presented. The mother had no property except her interest in this land.

The court found that the mother maintained a home for these children and cared for, educated and supported them until they respectively attained the age of 15 years, at which time each in turn commenced to be self-supporting; that she did so under an agreement with the guardian made in 1911 that she would be paid out of the property of the wards the sum of $200 per year for each of them until they respectively arrived at the age of 15 years; that such support was reasonably worth that sum; and that the amount to which the mother was entitled from the estate of each child at the time of the sale exceeded the value of the interest of each child in the land. These findings are sufficiently sustained by the evidence.

In In re Besondy, 32 Minn. 385, 387, 20 N. W. 366, this court quoted the following statement from Kent's Commentaries:

" 'The father is bound to support his minor children if he be of ability, even though they have property of their own; but this obligation in such a case does not extend to the mother;' "

and then said:

"In other words, the rule is not so rigorous in the case of the mother; and if the child has property, the mother is not bound to provide for its maintenance where the father would be."

After stating, in substance, that an allowance might be made for past maintenance without any prior agreement therefor, the court further said [32 Minn. pp. 388-9]:

"The law shows special favor to the mother, and her application for past maintenance will be granted in cases where that of a father would not be listened to. * * * The courts are not, ordinarily, careful to require of a mother who remains unmarried, as in the case of a father, that a special case be made, showing the inade-

quacy of her own means, and the necessity of an allowance for that reason."

The doctrine of the Besondy case, 32 Minn. 385, 20 N. W. 366, is well supported by the authorities. 15 Am. & Eng. Enc. Law (2 ed.) 103; 28 C. J. 1120, § 193; anno. in 5 A. L. R. 632, 639. Changes in the law relating to the contractual and property rights of married women and the rights and obligations of the mother in respect to her children may have done away with many of the reasons for applying a different rule to the mother than to the father, but we have no need to consider particularly the extent, if any, to which those rules have been modified.

It is the duty of a mother to support her infant children after the death of their father; and where she has adequate means to support both the children and herself it may be her duty to do so out of her own means, although they may have some property of their own. There is no hard and fixed rule governing such matters. Where the estate of the children is small as compared with that of the mother, it may be equitable to require her to support them out of her own means, if sufficient to enable her to do so; but where the estate of the children is large as compared with that of their mother, it may be just that they be supported in whole or in part out of their own property. It is a question of apportioning the burden equitably in view of all the circumstances. But it is the universal rule that where a parent, whether father or mother, does not possess sufficient means for the proper support of the children and they have property of their own, such property may be applied toward their support. Here the mother had no property other than the undivided interest which she had inherited from her husband in this land; and her limited means and the situation resulting therefrom as disclosed by the evidence fully justified the court in approving and allowing the payment in question.

The order is affirmed.