PROBATE COURT OF THE CITY OF PROVIDENCE *vs.* ELLEN A. HIGGINS, *alias et al.*
SAME *vs.* ELLEN HIGGINS, *alias et al.*
APRIL 8, 1937.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

BAKER, J.   These two actions of debt on bond, involving the same issues, were heard together by a justice of the superior court, sitting without the intervention of a jury. At the conclusion of all the evidence, he rendered a decision for the defendants in each case.   Thereafter, the plaintiff obtained leave from this court, under the provisions of general laws, 1923, chapter 347, sec. 3, to prosecute bills of exceptions in both cases to this court, and such bills of exceptions were duly prosecuted and are now before us. They are similar, and contain exceptions to the admission by the trial justice of certain testimony introduced on behalf of the defendants, to his refusal to strike out certain like evidence after it had been admitted, and to his decisions.

The record shows that the bonds in question were given to the probate court (formerly the municipal court) of the city of Providence, for the benefit of one Catherine Higgins, at present Catherine Clifford, the plaintiff herein, then a minor, but now of full age, and of another who is

not involved in these proceedings. In Ex. No. 7570, the action is brought on a bond in the penal sum of $900, dated November 29, 1918, given by the defendant, Mrs. Higgins, as principal, following her appointment and qualification as guardian of the persons and estates of minors under fourteen years of age, one of them the plaintiff. On this bond the defendant Annie V. Madden is surety.

In Ex. No. 7571, the action is brought on two bonds. Both are executed by the defendant Ellen Higgins as principal and as guardian of the persons and estates of said minors, one of whom was the plaintiff, and on both bonds the defendants James J. Madden and Annie V. Madden are sureties. The first of these last-mentioned bonds bears date of July 29, 1926, and is in the penal sum of $1,000 and was given when the defendant Mrs. Higgins was authorized by the probate court of the city of Providence to sell, as guardian of their estates, the interest of her wards in certain real estate situated in the city of Pawtucket. The second of such bonds is of a similar nature, but relates to the interest of the plaintiff in certain real estate located in the city of Providence, and is dated December 13, 1927, and is in the penal sum of $3,500.

From the evidence it appears that the defendant Mrs. Higgins was the second wife of one Richard Higgins, a florist in Providence, who died intestate August 15, 1918, leaving, in addition to Mrs. Higgins, three minor children by a former marriage. One of them is the present plaintiff, who at the time of her father's death was something over ten years of age. In November 1918, Mrs. Higgins was appointed and qualified as guardian of the persons and estates of these minors. The plaintiff lived continuously with her stepmother for upwards of nine years, or until September 1927, and thereafter on several other occasions prior to becoming of age February 22, 1929. During all this time the plaintiff was fed, clothed, educated and otherwise supported and maintained by the defendant Mrs. Higgins in a proper manner considering her resources

and station in life. As the plaintiff grew up, she assisted to some extent with the housework and to a less extent with the florist business, but prior to her majority was not otherwise employed, and turned over no money to her step-mother.

When Mr. Higgins died he left little personal property, a small amount of insurance and some real estate which was mortgaged. The florist business he had conducted and the greenhouses connected therewith were run down, and he owed a substantial sum of money at his death. Mrs. Higgins, the defendant, had some funds of her own which she used to repair the greenhouses and build up the business, which she then actively managed for some years, she herself working in the greenhouses. From this business the family was supported.

The plaintiff's net share in the amount received from the disposal of the Pawtucket real estate in 1926, under authority of the probate court, as hereinbefore referred to, was $335. Similarly, the net sum received from the sale of her interest in the real estate in Providence in 1927 was $1,853.46. In the instant cases the plaintiff is claiming from the defendants, by reason of alleged breaches of the bonds sued on, the sum of $2,455.83, which is the total of the amounts above set out, with interest thereon.

The breach of the bonds chiefly relied on by the plaintiff is that the defendant Mrs. Higgins, as the guardian of the plaintiff's estate, failed to file a final account, although cited by the probate court of the city of Providence to render such account by April 9, 1929, and again by August 9, 1932. Mrs. Higgins admits that she has rendered no final account of the plaintiff's estate to the probate court, and that this condition of the bonds in question has been breached. She contends, however, that she is entitled to account with the plaintiff, her former ward, who is now of full age, that the present actions provide a vehicle for such accounting and that the trials in the superior court were held upon the chancerization of the bonds involved, as

well as upon the question of whether any breach of the conditions of the bonds existed. It is clear from the record that the hearing in the superior court did proceed upon this theory.

The plaintiff's first contention is that the probate court has exclusive original jurisdiction of passing upon a guardian's account, and that the superior court had no jurisdiction to permit the defendant Mrs. Higgins, to make, in effect, an accounting in the present cases. The plaintiff's contention may be correct, in so far as it refers strictly to the account of a guardian with a probate court. As to such an account, the jurisdiction of the superior court is set out in G. L. 1923, chap. 323, sec. 10, which deals with the exercise of general probate jurisdiction by the superior court, and is as follows: "The superior court shall have jurisdiction of such appeals and statutory proceedings as may be provided by law, and may exercise general probate jurisdiction in all cases brought before it on appeal from probate courts or when such jurisdiction is properly involved in suits in equity."

Mrs. Higgins as guardian, however, has rendered no account to the probate court, but in the instant cases has been sued originally in the superior court by her former ward in these actions of debt on bond for breaches of the bonds involved herein. Under these circumstances the superior court is not exercising any general probate jurisdiction, but the cases are actions at law of such a nature that by statute they are to be decided by the application of equitable principles. General laws, 1923, chap. 344, sec. 4, in relation to the chancerization of bonds provides that: "That court shall award an execution in such case for so much of the penal sum as shall then be due and payable in equity and good conscience, for the breach of the condition, or other non-performance of the contract."

General laws, 1923, chap. 371, section 1, provides for the methods by which a guardian may settle his final account. The material portion of that section reads: "3. In

the case of a guardian of an estate: . . . *Fourth.* At the expiration of his trust to settle his account in the probate court or with the ward or his legal representative, and to pay over and deliver all the property remaining in his hands or due from him on such settlement to the person entitled thereto." It appears, therefore, that where the ward has reached majority, as in the cases at bar, and the guardianship has terminated by operation of law, two distinct methods of accounting appear in the statute, namely, a settlement in the probate court or with the ward. Either suffices, and if the account is settled with the ward, who can act for herself, none need be filed in the probate court. No particular way of settling with the ward is specified or required by the statute.

As the questions involved herein relate to the final account of a guardian, in our judgment the section just referred to is controlling rather than G. L. 1923, chap. 372, sec. 25, cited by the plaintiff, which clearly by its terms deals only with annual accounts of a guardian, and the consequences which follow the failure of such guardian to file an annual account when cited by a probate court so to do. We do not consider that this section last mentioned is applicable to the facts disclosed in the present cases. We are of the opinion, therefore, that the defendant Mrs. Higgins, having been sued for the breach of the conditions of the bonds involved herein, may, in these present proceedings, settle her account as guardian with the plaintiff, her former ward, even though she has neglected to account with the probate court after being cited so to do, by having the bonds in question chancerized by the superior court in order to have determined what amount, if any, is due the plaintiff, and that the superior court has jurisdiction to pass upon this issue in the instant cases.

The plaintiff's suggestion that the defendant Mrs. Higgins is not entitled to charge the plaintiff's estate for her board, lodging or clothing, and have such sums credited to Mrs. Higgins' account as guardian in the present ac-

tions in connection with chancerizing the bonds, because she stood *in loco parentis* to the plaintiff, her ward, is not tenable. The evidence does not show, and the trial justice did not find, that such relationship existed between the plaintiff and Mrs. Higgins during the guardianship. There is no testimony that the latter voluntarily placed herself *in loco parentis* to the plaintiff, or took upon herself the obligation of supporting the plaintiff, or stated that she did not intend to hold the ward's estate liable for the ward's support. On the contrary, Mrs. Higgins testified that she expected to be paid from the plaintiff's estate. It is well settled that a mother, acting as guardian of the estate of her minor child, has a right to charge that estate for the support and education of such child, especially if her own estate is not sufficient to provide proper support for both of them. Further, it is held that a stepparent is not legally responsible for the support of a stepchild. 46 C. J. 1338, 1339; *Staal* v. *Grand Rapids & Indiana R. R. Co.,* 57 Mich. 239; *In re Guardianship of Soltis,* 177 Minn. 571; *Englehardt* v. *Yung's Heirs,* 76 Ala. 534; *Gullick* v. *Slaten,* 169 S. C. 244; and see *Pearce* v. *Olney,* 5 R. I. 269.

The plaintiff also urges that Mrs. Higgins, as guardian, should not be allowed to receive credit for expenditures of any part of the principal of her ward's (the plaintiff's) estate, unless the guardian received prior authority from the probate court to make them, or the approval of such expenditures by such court. Nothing in the record herein shows that Mrs. Higgins ever received any such authority or approval. The plaintiff has cited certain decisions which lend support to her contention. *Albert's Appeal,* 128 Pa. St. 613; *Dowling* v. *Feeley,* 72 Ga. 557. Although the practice of obtaining prior approval is advisable, the weight of authority generally does not require such action by the guardian. She may be allowed credit for such expenditures, especially when for the ward's maintenance and education, if it appears that they were necessary and proper,

and such as the court would have authorized if application had been made to it. 28 C. J. 1115; 12 R. C. L. 1158; *Melanefy* v. *O'Driscoll,* 164 Mass. 422.

Moreover, this court has already adopted the more liberal view and we see no reason for departing therefrom. In *East Greenwich Institution for Savings* v. *Shippee,* 20 R. I. 650, the ward made the same claim concerning the expenditure of the principal of her estate as the plaintiff is now making herein, but the court declined to approve such a contention. That case was a bill of interpleader to determine whether a guardian or a ward, the trust relationship having terminated, was entitled to a fund representing the equity from a mortgagee's sale of certain property of the ward. The court, after calling attention to the fact that the strict rule in regard to the use of the principal of the ward's estate for her support and education is less extensively followed than formerly, said at page 657: "In most of the United States, however, the guardian may leave his conduct to the subsequent approval of the court when he presents his account, assuming the risk, of course, of obtaining such approval." Further, it may be noted that the record now before us shows that the ground set out in the guardian's petition, filed in the probate court of the city of Providence for the sale of the real estate situated in Providence, was to obtain funds for the support of the ward.

In the instant cases the testimony reveals that the guardian, Mrs. Higgins, had kept no accounts relating to expenditures made by her for the plaintiff's support, maintenance and education, during her minority. Only a few vouchers showing payments of this kind were produced by the guardian. It did appear from the evidence that the proceeds of the sale in 1927, of the plaintiff's interest in the real estate in Providence, was largely used in carrying on the florist business. The defendant Mrs. Higgins contended that this money merely reimbursed her for funds

previously applied to the plaintiff's support and education during her guardianship.

To substantiate the position of the guardian, that on an accounting with the plaintiff in these cases nothing was owed the latter, and that the expenditures for the support and education of the plaintiff, made by Mrs. Higgins and for which she claimed to be entitled to receive credit, exceeded the amount of the plaintiff's estate, evidence was submitted on the guardian's behalf tending to prove the reasonable cost of supporting and maintaining the plaintiff during the nine years and upwards she lived with Mrs. Higgins. This testimony was admitted by the trial justice over the objection of the plaintiff, who claimed the guardian should produce vouchers for the expenditures in question, and forms the basis for the first eight of the plaintiff's exceptions. Her ninth exception is waived, and her tenth exception is to the refusal of the trial justice to strike out testimony of a similar nature. This evidence so admitted set out in detail what the defendant Mrs. Higgins and a corroborating witness considered to be the reasonable expense per year, during the period involved, of maintaining, supporting and clothing the plaintiff. No testimony was offered by the plaintiff on this issue.

When a guardian, as in the case at bar, claims to be entitled to charge against her ward's estate certain sums for the support and maintenance of the ward, and has kept no accounts, has no vouchers, and has obtained from the probate court no prior authority to make such expenditures, we are of the opinion that, to meet the burden of proof which is imposed on the guardian under such circumstances, she must convince the court by satisfactory and clear evidence that the amounts so sought to be charged by her are reasonable and proper.

From the evidence presented on behalf of the guardian, Mrs. Higgins, the trial justice found that $4,070.95 was an appropriate allowance to her for which she was entitled to a credit, by reason of expenditures in connection with

the support, maintenance and education of her ward, the plaintiff. As this sum exceeded the amount claimed by the plaintiff in the present actions, the trial justice gave decisions for the defendants.

We have examined the transcript herein and find that the rulings of the trial justice in connection with the testimony above referred to are correct. The plaintiff's exceptions, therefore, in respect to such rulings are overruled. In proceedings of a nature generally similar to those now before us, courts have permitted a guardian, who has kept no accounts, to charge an estimated reasonable sum against the ward's estate for the maintenance, support and education of the ward during minority. *Pyatt* v. *Pyatt,* 46 N. J. Eq. 285; *Tudhope* v. *Avery,* 106 Mich. 149; *In re Beisel,* 110 Cal. 267; *Welch* v. *Welch,* 200 N. Y. Supp. 652; *Davenport* v. *Olmstead,* 43 Conn. 67.

The case last cited resembles in its facts the cases at bar, and the Connecticut statutes relating to guardianship appear to be very similar to our own. The following language is from the opinion in that case at page 76: "Aside from the guardian but one person is interested in the account. If he, when he becomes of age, settles with the guardian and gives him a receipt, and the settlement is a fair one, it is conclusive, and the bond is discharged. If the guardian refuses to settle, the minor may compel a settlement by an action of account. . . . A suit may also be instituted upon the bond. That bond is security for whatever amount may be justly due. Under our statute, . . . judgment should be rendered only for that amount. That can only be ascertained by deducting from the amount received the amount legally expended and that involves substantially a settlement of his whole account. Under proper pleadings there can be no valid objection to that course. Justice requires it, and it is attended with no special inconvenience."

We do not approve the method adopted by the guardian, Mrs. Higgins, in administering the estate of her ward, the plaintiff. A guardian should keep accounts, be prepared to

produce vouchers for expenditures, be careful not to mingle the ward's funds with other funds and, if called upon to account either with the probate court or with the ward, be able and ready to do so. However, this court has recognized the necessity of upholding the honest and unharmful though irregular conduct of such a fiduciary. In *Duffy* v. *McHale*, 35 R. I. 16, an appeal from the allowance by a probate court of a guardian's final account, this court said, at page 20: "From the nature of probate proceedings it frequently happens that persons without experience or training in such matters are called upon to act as executors, administrators, or guardians. They may be the persons most available and notwithstanding their lack of experience they may be the persons most suitable for appointment. It is the policy of the courts to sustain, if possible, the acts of such executors, administrators or guardians, when the court finds that their action has been in good faith, and without detriment to the estates and interests entrusted to them, although perhaps such action has been irregular in some particulars." While that case was an appeal from probate proceedings, the same general principles apply as well to the cases now before us, which are actions at law on probate bonds.

In these proceedings, which in effect amount to the chancerizing of the bonds in question, the trial justice, under the statute, G. L. 1923, chap. 344, sec. 4, *supra,* was obliged to ascertain whether "in equity and good conscience" any amounts were due the plaintiff. The testimony shows clearly that Mrs. Higgins as guardian acted honestly, in good faith and without any intention of injuring the plaintiff or her estate. No claim of fraud or willful wrongdoing is made by the plaintiff. It appears that Mrs. Higgins, by her own efforts, and with the aid of her own funds, maintained a home for and brought up, over a period of years, her husband's children and successfully conducted his business. She was not a woman of much education or business experience, having been a domestic before her marriage to Mr. Higgins.

Unfortunately, she did not ask for a great deal of advice from her attorney. Very possibly she may have so conducted herself in handling the ward's estate that it is now difficult for her to make a complete or accurate accounting. In the present proceedings, however, she is entitled to an impartial examination by the court into all matters pertaining to her management of the ward's property, in order that a final settlement between them may be arrived at. From this viewpoint, the testimony and the record in the instant cases, in our judgment, reveal facts and circumstances which support the decisions of the trial justice, and we find them to be without error.

The plaintiff's exceptions to said decisions are therefore overruled.

All of the plaintiff's exceptions are overruled, and the cases are remitted to the superior court for the entry of judgment on the decisions.

*Joseph H. Coen,* for plaintiff.

*Hoyt W. Lark, Hart, Gainer & Carr,* for defendants.