ANDREW CAPEK

*v.*

ANNIE KROPIK *et al.*

*Filed at Ottawa June 15, 1889.*

1. PARENT AND CHILD—*step-children—duties and obligations of the step-father.* A husband is not bound to accept into his family the children of his wife by a former husband, but if he does so voluntarily, so long as the relation is permitted to exist he assumes the duties and obligations of a parent. A person *in loco parentis* means a person taking upon himself the duty of a father to make provision for the child.

2. SAME—*earnings of step-children—rights of step-father.* If a step-father, after the death of his wife, does not stand *in loco parentis* to her minor children, their earnings, at least over and above the amount necessarily expended for their maintenance, if applied by him in discharge of an incumbrance on real estate which belonged to him and his wife at her death as tenants in common, will inure to the benefit of such children succeeding to their mother's half of the estate. He would then be their trustee in the application of such fund. But if he stands *in loco parentis* to his step children, he will be liable for their support, and entitled to their earnings while that relation continues.

3. SAME—*gift—whether to be so regarded—relations between the parties considered.* Where two persons stand in such relation with each other that an obligation rests upon one of them to make provision for the other, a purchase or investment by the former in the name of the latter, of an amount that would constitute a provision for the beneficiary, will of itself afford evidence of a gift. The presumption of gift will arise from the moral obligation to give.

4. Although the payment or investment may not be inferred to be a gift from the mere relation of the parties to each other, yet it is always competent to consider the attendant facts and circumstances, from which an intention to give or not to give may be inferred.

5. A husband and wife owned a lot as tenants in common, and gave a mortgage on the same for money expended by them in the purchase and improvement of the property, which was their homestead. The wife died, leaving children by a former husband, and after her death the husband and her children continued to occupy the property as a homestead. The husband paid off the mortgage debt, principally with the earnings of the children : *Held,* that even if the husband was legally entitled to the earnings of his step-children, his use of them, not only to preserve the children's interest in the lot, but also to ex-

tinguish the lien resting on his undivided half thereof, as well as to preserve the homestead, evinced an intention on his part to make a gift to his co-tenants of the money so paid.

6. HOMESTEAD—*purpose and policy of the law.* The purpose and policy of the law in prescribing the homestead exemption, is to provide a home and shelter for the surviving husband or wife and for the minor children, and to accomplish this, the homestead interest is continued for the joint and several benefit of the survivors, and of the children after the death of the householder in whom the principal estate was vested.

7. SAME—*as between husband and wife as tenants in common—stepchildren of the former.* Where a wife dies seized of an undivided half of a lot as a tenant in common with her husband, the premises being their homestead, and leaving minor children by a former husband, then living in the family, the husband will, as before the death of the wife, be entitled to homestead in one-half of the lot in his own right, as owner of the fee; and the homestead interest in the moiety of which the wife died seized, will, by the statute, be continued for his benefit, and for the benefit of the minor children of the wife until the youngest child attains the age of twenty-one years, each moiety of the fee contributing to the homestead estate.

8. In such case, the right of occupancy is not divisible, and although the minor step-children can only have homestead in the moiety of which their mother died seized, yet the right of occupancy, so long as the homestead continues, must necessarily continue for their benefit in the whole of the land constituting the homestead, including the land of the husband.

9. Where a homestead estate exists, predicated upon an estate held by the householder as a tenant in common with another, there is no provision of law authorizing allotment of homestead in a moiety of the land.

10. SAME—*sale in partition—apportionment of proceeds—in case of tenancy in common with step-children.* Upon the sale of the homestead, which may be made under proper consent given, the husband in this case, if entitled to such homestead in severalty, should receive such a sum of money as would represent his right in the entire estate, as well that held by him in his own right as that in right of his wife,—that is, the homestead attaching to the entire estate, he would be entitled to receive from the sale of the moiety belonging to his wife's children, one-half of the value of the homestead interest, such value to be ascertained according to the usual method of computing the value of life estates.

11. On the other hand, upon such sale the minor children could take only so much as represented the homestead in the portion of which

their mother died seized. But the right of homestead,—the right to occupy and use while the homestead continues,—is vested by law in the surviving husband or wife and the children, alike.

12. SAME—*right of waiver—by a step-father.* In this case, if the surviving husband was the father of the children, and entitled to their control and custody, their right would be subordinated to his, so far that his waiver, release or abandonment would amount to the extinguishment of their homestead interest. But here, he not being their father or standing *in loco parentis,* has no power to abandon their right of homestead in their mother's estate, or to exclude them from participation in its enjoyment.

13. CROSS-ERRORS—*must be assigned.* This court will not consider cross-errors urged by the appellee or defendant in error, unless they are assigned on the record. It is not sufficient to discuss them in the argument.

APPEAL from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

Appellant filed his bill in the Superior Court of Cook county, against Annie Kropik, John Kropik, her husband, John Mlabek, Thomas Mlabek, James Mlabek and Thomas Vosicky, for partition of lot 29, in block 2, in Dobbins' subdivision, etc., in Cook county. Appellant was the step-father of Annie Kropik, and of John, Thomas and James Mlabek, who were the children of a former husband of appellant's deceased wife, Ann Capek, and in his bill claimed to be the owner of the undivided half of said lot, as tenant in common with said children of his deceased wife, who, at the time of her death, it was alleged, was the owner of the other undivided half of said lot, and which interest descended to and was owned by said children in equal parts. The bill also alleged that appellant was entitled to dower and homestead in the portion of said lot owned by his wife at her decease, and also to contribution from said heirs on account of money by him expended in improving the common estate, and removing incumbrances therefrom, and in paying taxes thereon; that John, Thomas and James Mlabek were infants, and Thomas Vosicky was occupying tenant of the premises.

The bill was answered by Annie and John Kropik, and by guardian *ad litem* duly appointed for the infant defendants; and the said Annie Kropik also filed her cross-bill. In the answer and cross-bill of said Annie it was alleged that said Ann Capek died intestate, leaving surviving appellant, her husband, and her children already named, her only heirs-at-law; that at the time of her death said Ann Capek and appellant held the legal title to said lot, but the said lot was paid for with the separate money and property of said Ann Capek, acquired prior to her marriage with appellant; that appellant paid nothing towards its purchase, and that the title to said lot was taken in the name of appellant and the said Ann, by appellant, without the knowledge or consent of his wife, whereby a resulting trust arose in favor of said Ann and her heirs-at-law in respect of the moiety of the title held by appellant, and that he should be declared a trustee for the children of said Ann in respect of said one-half of said lot, but admitting that appellant was entitled to dower and homestead therein. It was admitted that appellant and his wife borrowed $1000, and secured the same by their joint trust deed upon the lot; that this money was expended in improving said lot; that such trust deed had been released, but alleged that it was discharged and paid off with the money of appellees, children of said Ann, appellant furnishing no part thereof, and denying that appellant had paid anything for improvements, and the sum of $63.10, only, for taxes, and, finally, claiming that appellant be charged with rents and profits, etc.

Answer was filed denying the material allegations of the cross-bill. Replications were filed, and the cause referred to the master. The cause was heard upon the pleadings, report of the master, and exceptions thereto, resulting in a decree, finding, beside the necessary jurisdictional facts, that Ann Capek died seized of the undivided one-half interest in said lot, and that appellant was seized of the remaining one-half in fee; that the estate of said Ann descended to her said chil-

dren in equal parts; that appellant and said minor children were entitled to an estate of homestead in said lot, and appellant to an estate of dower in the undivided half of said lot owned by said children, appellees, after allotment of homestead; that said children were entitled to contribution from appellant of the sum of $370, being one-half of the value of improvements made by said Ann in her lifetime, and that appellant was entitled to contribution for improvements, etc., made by him, the sum of $310; that the infant children were entitled to one-half of the rents received since their mother's death upon all that part of the premises not included within the homestead, such amount to be ascertained by reference to the master for that purpose; that appellant was entitled to partition, and to dower and homestead, and incorporating the usual provisions to effect their allotment, and dismissing the cross-bill, so far as the same sought to establish a resulting trust in said lot in favor of appellees, or any of them. Appellant, complainant in the original bill, brings the record to this court.

Mr. THEODORE H. SCHINTZ, for the appellant:

As appellant gave his step-children a home, clothed and maintained them, he stood *in loco parentis* to them, and was entitled to their wages or earnings. *Brush* v. *Blanchard,* 18 Ill. 46; *Attridge* v. *Billings,* 57 id. 489; *Mowbry* v. *Mowbry,* 64 id. 387; *Magee* v. *Magee,* 65 id. 255.

When the relation between the parties, as here, is that of step-father and step-child, it is incumbent on the party claiming an advancement, to prove the same. *Bennett* v. *Bennett,* 10 L. R. (Ch. Div.) 474; *Powys* v. *Mansfield,* 3 M. & C. 367; *Tucker* v. *Burrow,* 2 H. & M. 515; *Todd* v. *Morehouse,* 19 L. R. Eq. 69.

The presumption from the facts is entirely against a gift or advancement to the step-children, and the case we submit comes within the usual rule as to contribution by tenants in

common. Because complainant eventually took a release,. and not an assignment of the trust deed, he is not deprived of his right to contribution. *Robinson* v. *Leavitt,* 7 N. H. 99 ;. *Towle* v. *Hoit,* 14 id. 61 ; *Jenness* v. *Robinson,* 10 id. 215 ; *McCready* v. *Van Antwerp,* 24 Hun, 322 ; *Titsworth* v. *Stout,* 49 Ill. 80 ; *Wilton* v. *Tazewell,* 86 id. 29 ; *Carter* v. *Penn,* 99 id. 390.

Mr. John Lyle King, and Mr. Josef F. Kohout, for the appellees.

Mr. Chief Justice Shope delivered the opinion of the Court :

In respect of the contention of appellees, that the court erred in refusing them the full measure of relief sought by the cross-bill, and to which the major part of the argument of counsel is directed, it is sufficient to say, they have assigned no cross-error upon this record.

It is conceded by appellant, and found by the court, that. at the death of Ann Capek, his wife, one-half of this lot descended in fee to her four children named, subject to dower and homestead of appellant therein. A question of some difficulty arises from the fact that at the time of the death of Ann Capek, the entire lot, and the interest of each tenant in common, was encumbered by a deed of trust, executed jointly by appellant and his wife, to secure a loan of $1000, procured from the National Loan Association. It is sufficiently accurate to say, that the weight of evidence shows that the entire sum realized upon this loan was expended either in the purchase of the lot or in the improvements placed thereon, and inured to the benefit of the common estate. The loan was made October 10, 1882, and Mrs. Capek died the 30th of the same month, leaving complainant, her husband, and four children, her surviving. It also appears, that prior to and at the death of Mrs. Capek, said premises, with the dwelling, etc., thereon, were occupied as a homestead, and that appellant

and the minor children of Mrs. Capek, after her death, continued for some years to occupy the same as a homestead.

The $1000 loan was to be paid, and was paid, in monthly installments, running through a series of years. During that time the children of Mrs. Capek, (and step-children of appellant,) after the death of their mother, lived with and as part of the family of appellant. While it is not absolutely certain, we think it appears that the money used in making such payments was earned by such children, and was taken by appellant and applied in meeting the installments as they came due from time to time, until the loan mentioned was discharged. It is satisfactorily shown that the money earned by the children and appropriated by appellant, at least far exceeded one-half of said loan and the taxes upon the property. Appellant was without means, worked only a portion of the time, as a day laborer, and earned an amount wholly insufficient, as it would seem, to meet the expenses of the family and make these payments. Indeed, it is not shown that he had any resources within himself from which any considerable portion of the loan could have been paid.

If it be conceded that appellant did not stand *in loco parentis* to these children, their earnings, at least over and above the amount necessarily expended for their maintenance, if expended by appellant in liquidation of the loan, would inure to their benefit,—he would be their trustee in the application of said fund. If, however, he stood *in loco parentis* to his step-children, he would be liable for their maintenance, and entitled to their earnings while that relation continued. The husband is not bound to accept into his family the children of his wife by a former husband, but if he does so voluntarily, so long as the relation is permitted to continue he assumes the duties and obligations of a parent. So it is said, "that a person *in loco parentis,* means a person taking upon himself the duty of a father to make provision for the child." *(Powys* v. *Mansfield,* 3 M. & C. 367.) There is much discussion in

the books as to whether the duty thus self-imposed extends beyond the mere obligation of maintenance, some of the authorities holding that the presumption of advancement for the benefit of the child will not arise from the fact, alone, that the donor was *in loco parentis* to the supposed donee. See *Tucker* v. *Burrow,* 2 Hem. & Mill. 515; *Todd* v. *Morehouse,* 19 L. R. Eq. 69; *Bennett* v. *Bennett,* 10 L. R. Ch. Div. 474. See, however, 2 Pomeroy's Eq. Jur. sec. 1039, and authorities cited. We do not deem it necessary in this case to review the authorities upon this subject. The rule as established by the weight of authority probably is as stated by JESSELL, M. R., in *Bennett* v. *Bennett, supra:* "The doctrine of equity, as regards presumptions of gifts, is this: that where one person stands in such relation to another that there is an obligation on that person to make provision for the other, and we find either a purchase or investment in the name of the other, * * * of an amount which would constitute a provision for the other, the presumption arises of an intention * * * to discharge the obligation, * * * and therefore, in the absence of evidence to the contrary, the purchase or investment is held to be, in itself, evidence of a gift,—in other words, the presumption of gift arises from the moral obligation to give."

It is said that this view reconciles all the cases upon the subject except the case of *Sayres* v. *Hughes,* 5 L. R. Eq. 376, the reasoning of which is disapproved by the learned master of the rolls. It is, however, unquestioned, that although the payment or investment may not be inferred to be a gift from the mere relation of the parties, each to the other, yet it is always competent to consider the attendant facts and circumstances, from which an intention to give or not to give may be inferred. *Current* v. *Fago,* 1 Collier's Ch. 262; *Beckford* v. *Beckford,* Lofft, 490; *Ebrand* v. *Denser,* 2 Ch. Cases, 26; authorities *supra.*

The indebtedness discharged, and for which appellant seeks contribution, was the joint indebtedness of the tenants in com-

mon, and its discharge was for the benefit of the joint estate. The money with which the lien was extinguished was largely produced by the labor of these children, and while it may be that appellant was legally entitled to their earnings, they were used by him to preserve not only the interest of his co-tenants in the lot, but also to extinguish the lien resting upon his undivided half thereof, as well as to preserve the homestead, which he now seeks to have set off, to himself. It is thus apparent that the payments were made by him to save the common estate, and that he has received the benefit of the fund with which he now seeks to charge appellees. No good purpose could be subserved by an extended discussion of the facts and circumstances under which these payments were made, and which evince an intention on the part of appellant of making the same for the joint benefit of himself and these children, and to protect the joint estate. Under the circumstances here shown, it may properly be held that such payments were intended as a gift to the co-tenants, who were members of his family, and who, as we have seen, produced the funds with which the lien upon the common property was discharged, and we therefore think the chancellor committed no error in so holding.

Nor are we prepared to say that the chancellor erred in charging appellant with one-half of the sum advanced by his wife, in her lifetime, for improvements placed upon the premises. It is true, the evidence is conflicting and not altogether satisfactory; but the chancellor was justified in finding that the weight of testimony sustained that contention of appellees.

A somewhat more difficult question arises out of the complications in respect of the homestead interest in this lot. The court found and decreed that appellant and his three minor step-children, John, Thomas and James Mlabek, were entitled to an estate of homestead in said lot 29, and that appellant was entitled to dower in the undivided half of said lot of which his wife died seized, after allotment of the joint

estate of homestead. It is first objected, that the court erred in finding that appellant or the minor step-children named were entitled to an estate of homestead during the minority of the youngest thereof, in the whole of said lot, and in decreeing the homestead to them in any part of the premises. We are not aware that this precise question has been passed upon. The estate of homestead is given to every householder having a family, in the farm or lot of land, and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence. (Rev. Stat. chap. 52, sec. 1.) And such "exemption," it is provided, shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, and of the children until the youngest child becomes twenty-one years of age; and that in case the husband or wife shall desert his or her family, the exemption shall continue in favor of the one occupying the same as a residence. Rev. Stat. chap. 52, sec. 2.

Appellant and his wife were seized as tenants in common of the lot in question, and, each occupying the same as a residence for themselves and family, were jointly seized of an estate of homestead in such lot. Upon the death of the wife the fee to the moiety owned by her descended to and vested in her heirs-at-law, subject to the homestead interest of the surviving husband and her minor children, and the dower right of the husband in the residue of the premises after the allotment of the homestead estate. Upon her death, as before, the husband, by virtue of the statute, was entitled to homestead in one-half of said lot in his own right, as owner of the fee; and the homestead interest in the moiety of which the wife died seized, was, by the statute, continued for his benefit, and for the benefit of the minor children of the wife, until the youngest attained the age of twenty-one years, each moiety of the fee contributing to the homestead estate. It will, we think, be unnecessary to discuss, here, the character

or quantity of estate taken by the surviving husband or wife, or by the minor children, in the homestead. It is apparent that the right of occupancy is not divisible, and although the minor step-children could only have homestead in the moiety of which their mother died seized, yet the right of occupancy, so long as the homestead continues, must necessarily continue for their benefit in the whole of the land constituting the homestead,—that is, no allotment of the homestead could be made except by setting off by metes and bounds, or otherwise, the dwelling house, etc., of the value of $1000; and it necessarily follows, that any allotment of homestead made to appellant must require that each moiety of the fee contribute its share thereto. It was not, therefore, error for the court, upon the prayer of complainant that his homestead be set off, to find and declare the homestead to exist in the whole of said premises.

The purpose and policy of the law is to provide a home and shelter for the surviving husband or wife and for the minor children, and to accomplish this the homestead interest is continued, for the joint and several benefit of the survivor and of the children, after the death of the householder in whom the principal estate was vested. Where a homestead interest or estate exists, predicated upon an estate held by the householder as tenant in common with another, there is no provision of law authorizing allotment of homestead in a moiety of the land. Upon the sale of the homestead, which may be made under proper consent given, (Partition act, sec. 33,) in proceedings of this character, appellant, if entitled to such homestead in severalty, should receive such a sum of money as would represent his right of homestead in the entire estate, as well that held by him in his own right, as that in right of his wife,—that is, the homestead attaching to the entire estate, he would be entitled to receive from the proceeds of the sale of the moiety belonging to appellees, one-half of the value of the homestead interest, such value to be ascertained according

to the usual method of computing and determining the value of life estates in similar cases; *(Merritt* v. *Merritt*, 97 Ill. 243;) while, on the other hand, it is manifest that upon such sale the minor children, here, could take only so much as represented the homestead in the portion of which their mother died seized. But the right of homestead—the right to occupy and use while the homestead continued—is vested by law in the surviving husband or wife and the children · alike. It is. true, that if appellant was the father of these minor children,. and entitled to their control and custody, their right would be subordinated to his, so far as his waiver, release or abandonment would amount to the extinguishment of their homestead interest. *(Kingman* v. *Higgins*, 100 Ill. 319.) Here, however, no such state of facts exists. Appellant is not the father of these children, nor is there any pretense that at the time of filing this bill, or for a considerable time prior thereto,' he stood *in loco parentis* to them, or either of them. It is not, therefore, in the power of appellant to abandon the right of homestead of these minor children in their mother's estate, or to exclude them from participation in its enjoyment.

We are of opinion that the court did not err in decreeing that appellant and such minor children were entitled to homestead in the premises sought to be partitioned.

The decree charged appellant with one-half of the rents. accruing from that part of the estate not included within the homestead proper, and referred the cause to the master to ascertain and report the amount thereof, etc. In this there is no error of which appellant can complain. It is not proposed to charge him with rents received by him from the homestead estate.

The other questions pressed upon our attention are purely of fact. The evidence is conflicting, but it is sufficient to say, that we have carefully examined the record and find no error therein..

The decree of the Superior Court is affirmed.

*Decree affirmed.*