MARGARET POPEJOY, Respondent, v. HY-
DRAULIC PRESS BRICK COMPANY, Appel-
lant.

**Kansas City Court of Appeals, June 12, 1916.**

1. **MINES AND MINING: Damages: Safety Device: Elevator:
   Evidence.** Sufficiency of evidence discussed as to defects in
   the safety device to an elevator in a mine.

2. ———: **Notice: Elevator Cable: Former Break: Evidence.** Evi-
   dence that an elevator cable in an adjoining mining shaft broke
   a year prior to the time of the break in the other shaft which
   caused the death of an employee is not admissible to prove
   notice of knowledge of defects in the latter cable.

3. ———: **Deceased Employee's Widow: Child of Deceased by For-
   mer Marriage: Evidence.** It is error to allow evidence or state-
   ments of counsel in a suit of the widow, that the deceased em-
   ployee left a minor child by a former marriage. She is not
   under legal obligation to support such child and the fact that
   there is such child is not an element of damage.

4. ———: **Mining Shaft Elevator: Defect: Knowledge: Repair.**
   where the proprietor of an elevator in a mining shaft knows of
   a dangerous defect in the elevator and continues to use it and
   an employee is killed by its falling to the bottom of the shaft,
   the owner cannot escape liability by the fact that he had not
   known of the defect long enough to repair it.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lu-
cas*, Judge.

REVERSED AND REMANDED.

*Deatherage & Guthrie* for appellant.

*T. J. Madden* for respondent.

ELLISON, P. J.—Plaintiff's husband was killed
in an elevator in defendant's mining shaft while in
its employment. She brought this action for damages

and obtained a verdict for $8260, but remitted $760 and judgment was rendered for her for $7500.

The mining was carried on for a certain quality of clay suitable for defendant's business and the shaft, if considered one, was divided into two divisions, known as the north and south shafts, which were 213 feet deep. Deceased was in the south elevator and was killed by it falling to the bottom with him.

The shaft had two 4 x 6 wooden guides fastened to its sides from top to bottom by which the elevator was held in place and in which it worked. Each elevator was run by its own cable, though worked over one drum. The elevator in question (perhaps both) was provided with a safety device consisting of metal clamps provided with teeth, so that they would catch in the guides and prevent the elevator from going to the bottom if the cable rope broke.

The immediate cause of the fall of the elevator was that one side of the shaft, for reasons we need not detail, had inclined inwardly at one place and thereby, to some extent, lessened its width and this made it noticeably difficult for the elevator to pass at that point and in the instance in controversy the strain broke the cable when the elevator fell to the bottom and killed deceased.

The points of negligence pleaded which were relied upon at the trial were three: First, the shaft, at the point where the cage or elevator, became fastened, was swollen and displaced so as to obstruct its passage. Second, the cable rope was old, rusted and rotten where it was fastened into the socket. Third, the safety devices would not take hold of the guides and prevent a fall of the cage or elevator because the teeth of the devices were worn and the spaces between the same were filled with rust and other substances.

Defendant offered a demurrer on the ground that there was no evidence of negligence in either of the respects specified. It was refused. As to the first

and second grounds the refusal was proper. We think there was evidence clearly making those specifications questions for the jury. But the third is not so easily disposed of. The evidence shows that the safety device, sometimes from causes not to be provided against, will fail to perform its function of clasping the upright guides; at least that the failure will sometimes arise from causes not properly attributable to negligence. In this instance plaintiff seeks to fasten negligence on defendant by evidence in her behalf that the spaces between the teeth of the device had been allowed to fill with rust and other substances up to the top of the teeth which made it impossible for them to automatically take hold of the wooden guide upright and thereby arrest the fall of the elevator. The evidence does not show, perhaps such a thing could not occur, that the spaces between the teeth were so completely filled as to hide the teeth from sight, and we do not understand how it could be that these spaces were filled with substances, hard enough, and solid enough, to prevent the teeth from pushing out far enough to take hold of the guide or at least marking it, and yet these substances leave the guides unscarred. These considerations lead to the conviction that this specific negligence was not proven and that the device failed to work from some other cause. For these reasons defendant's instruction No. 11 should have been given.

It seems that the cable running the elevator in the north shaft broke a year prior to the break of the one here involved and that they were similarly fastened to the elevator, and for the sole purpose of proving notice to defendant that this one was likely to break, evidence of the breaking of the other one was allowed over the objection of defendant. We think the objection well taken. It is plain to see how prejudicial to defendant that circumstance was. Such testimony was wholly unnecessary; for the condition

of this cable and its manner of fastening, together with the condition in which it was kept, and the manner in which it was run, as well as its make, construction, and length of time in use were all before the jury. [17 Cyc. 275, 276.] And we think in the state of the case made it was too remote. [Newcomb v. Railroad, 169 Mo. 409.]

It appears that deceased had been married before marrying plaintiff and that he had one female child who was about twelve years old at his death. He left no children by plaintiff. But plaintiff's petition is so worded that it would naturally be inferred that this was plaintiff's child, and in that way the case was stated to the jury by plaintiff's counsel. Objection was made to a statement about children on the ground that the damages belonged to the widow alone. Counsel for plaintiff replied with the statement that he had "an absolute right to show how many children he had; that is an element of damage." Afterwards and during the hearing of the testimony given by plaintiff it developed that the child was her husband's by a former marriage and that she had no children. Then followed a motion by defendant to discharge the jury on account of the prejudice produced upon the jury. Plaintiff's counsel insisted on his right to have the fact of there being a child by a former marriage considered as a part of plaintiff's case. The court ruled otherwise, but refused to discharge the jury but struck out the testimony. It has been ruled by the Supreme Court that on account of the liability in Missouri of a widow to support her infant children it was proper to show this burden had been cast upon her by the act of defendant in causing her husband's death. [Tetherow v. Railroad, 98 Mo. 74, 84.] But this liability of the widow does not extend to children of her husband by a former marriage. Here there is an instance of highly prejudicial matter being twice impressed on the jury. The verdict bears out de-

fendant's point. It was for almost the maximum sum allowed by the statute, so large that a part of it was voluntarily remitted.

The evidence showed that during the four months deceased was working for defendant near the suburbs of Kansas City, plaintiff lived in another county and he only sent her ten dollars during that time. In the circumstances, we think defendant did not have a fair trial.

Defendant has insisted upon an objection to plaintiff's instruction submitting the hypothesis of defendant's knowledge of the defective condition of the cable and the shaft, in that there should have been a qualification to the effect that such knowledge should have existed a sufficient length of time to have repaired the defect. Such qualification would have been improper. If a master knows or should know, of dangerous defects in an instrumentality which he installs, he assumes liability for continuing its use (Greene v. Railroad, 31 Minn. 248, 252), unless excused by such circumstances as show assumption of risk, or contributory negligence. Such cases cannot be likened to instances where public thoroughfares in municipalities are out of repair. The good of the public require their continued use and, in ordinary instances, no liability attaches for injuries until a reasonable time for repair has elapsed since knowledge of the defect. There are of course many other instances. But this case is not of that class. If the proprietor of a passenger elevator in a public building knows of a dangerous defect in it which is liable to kill or injure the unsuspecting operator or the passengers, he cannot escape liability by the plea that he had not known it long enough to repair it.

The judgment is reversed and the cause remanded. All concur.