## MILLER v. UNITED STATES.

No. 11958.

Circuit Court of Appeals, Eighth Circuit.

Nov. 25, 1941.

Supplemental Order Jan. 19, 1942.

See 124 F.2d 849.

Phil G. Alston, of Texarkana, Ark., for appellant.

Thomas C. Pitts, Asst. U. S. Atty., of Fort Smith, Ark. (Clinton R. Barry, U. S. Atty., and John E. Harris, Asst. U. S. Atty., both of Fort Smith, Ark., on the brief), for appellee.

Before SANBORN and JOHNSEN, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

The appellant, Jessie William Miller, was convicted of the crime of kidnaping under the so-called Lindbergh Law, 18 U.S.C.A. § 408a, Act of June 22, 1932, as amended by Act of May 18, 1934, Chap. 301, 48 Stat. 781. The indictment charges that the appellant and his wife, Artilla Miller, on or about August 28, 1939, lured, decoyed, kidnaped and inveigled one Dorothy Garner from a point in Arkansas to a point in the State of Texas for the purpose of holding her in involuntary servitude and to make her work in their behalf, and that they held her in such captivity and servitude by force, threats and beatings until February 28, 1940. The indictment further charges that the luring and inveigling consisted of certain false statements made by the defendants to Dorothy Garner to the effect that her grandfather was ill in Texas and desired her to come to him. It was alleged that, at the time of the kidnaping, Dorothy Garner was over eighteen years of age and a married woman.

Dorothy Garner is the illegitimate daughter of Artilla Miller, wife of the appellant. The marriage of the appellant and Artilla Miller took place subsequent to the birth of Dorothy Garner, whose putative father was a man by the name of Monroe. She was approximately eighteen months old when her mother married the appellant, and she lived in their household for about four months. Thereafter, she lived with her grandfather until, with the consent of the mother, she was married on September 6, 1936, to one Will Garner. At the time of her marriage, she was approximately fifteen years of age. The testimony was in conflict as to whether or not she had attained her eighteenth birthday when the offense herein took place. However, at the close of all the testimony, the court directed a verdict of not guilty as to the mother, Artilla Miller, but refused to instruct the jury, as appellant requested, that if they found that Mrs. Garner was not eighteen years of age at the time of the offense, they should acquit him. It was appellant's contention that, as the husband of the mother of the illegitimate daughter who was kidnaped, he was a parent within the meaning of the statute, and consequently, if she was a minor, he was entitled to an acquittal.

 This appeal does not raise any other question but the correctness of the court's ruling in refusing to submit to the jury the age of Mrs. Garner at the time she was kidnaped. It was the trial court's opinion that this question was immaterial because the appellant was not a parent within the purview of the statute. It is recognized that Mrs. Garner was domiciled in Arkansas at the time of the offense, and under the laws of that State a girl under eighteen years of age, although married and thereby emancipated, is considered a minor. Pope's Digest of the Statutes of Arkansas, Section 6215, states: "Males of the age of twenty-one years, and females of the age of eighteen years, shall be considered of full age for all purposes, and, until those ages are attained, they shall be considered minors."

See Watson v. Billings, 1881, 38 Ark. 278, 42 Am.Rep. 1; Harrod v. Myers et al., 1860, 21 Ark. 592, 76 Am.Dec. 409.

The pertinent portion of the act in question provides: "Whoever shall knowingly transport or cause to be transported, or aid or abet in transporting, in interstate or foreign commerce, any person who shall have been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away by any means whatsoever and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall, upon conviction, be punished * * *."

This statute as first enacted, June 22, 1932, was limited to cases of kidnaping for reward or ransom. Later, on May 18, 1934, the act was amended so as to extend jurisdiction to cases where a person was kidnaped by any means and held for ransom or reward *or otherwise, except, in the case of a minor by a parent thereof.* (The italicized portion indicates the amendment). Manifestly, the exception noted was prompted by the extension of federal jurisdiction to all kidnaping involving interstate commerce, regardless of the purpose for which the kidnaped person was held. Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522. The records of the domestic relations courts throughout the Nation are replete with instances where, when domestic difficulty arises, parents, because of affection for their children, inveigle or spirit them away. In absence of the exception, such person might suffer the condemnation of the statute if interstate commerce were involved. It may be that Congress was primarily concerned with this class of cases when the exception was framed. This view is in accord with the dictum in the Gooch case, wherein Justice McReynolds, in discussing the 1934 amend-

ment, but with reference to its application to the kidnaping of police officers who were held by gunmen for the purpose of avoiding apprehension or preventing an alarm being given, stated (page 128 of 297 U.S., page 397 of 56 S.Ct., 80 L.Ed. 522) :

" \* \* \* If the word 'reward,' as commonly understood, is not itself broad enough to include benefits expected to follow the prevention of an arrest, they fall within the broad term, 'otherwise.'

"The words 'except, in the case of a minor, by a parent thereof' emphasize the intended result of the enactment. They indicate legislative understanding that in their absence a parent, who carried his child away because of affection, might subject himself to condemnation of the statute. Brown v. Maryland, 12 Wheat. 419, 438, 6 L.Ed. 678."

█ The appellant contends, however, that he is entitled to the most liberal and favorable interpretation of the statute consistent with legislative intent, and that, if he is afforded such construction, he should be characterized as a parent within the meaning of the act. At the outset, it should be noted that, by strict construction, the appellant was not the stepfather of Mrs. Garner. The term "stepfather" generally means the husband of one's mother by a subsequent marriage. 60 Corpus Juris, p. 32. Or, as stated in 46 Corpus Juris p. 1337: "The relation of step-parent and stepchild is that existing between a husband or wife and the child of his wife or her husband as the case may be by a former marriage."

See Thornburg v. American Strawboard Co., 141 Ind. 443, 445, 40 N.E. 1062, 1063, 50 Am.St.Rep. 334, wherein it was stated: "As generally understood, the husband of one's mother by a subsequent marriage is a stepfather; strictly speaking, therefore, a man who marries the mother of a bastard child does not become the stepfather of such child."

The definition of the term "step-parent", however, is not particularly important nor is it controlling herein. Even though it may be assumed that, if Mrs. Garner had been a member of appellant's household, cared for and nurtured by him and in his custody and control, the relationship of stepfather and stepchild would have existed in the generally accepted usage of such terms, the evidence herein does not present such a picture. At the time of the kidnaping, Mrs. Garner was living with her husband at Dequeen, Arkansas, and had been married for about three years. She had assumed a new duty as a wife with a responsibility to her husband and to her own home. She was no longer subject to the control or supervision of her mother. She was an emancipated married woman. From the time she was twenty-two months of age until her marriage, she had made her home with her grandfather, except for a short period when she was in an orphanage. She was neither a member of appellant's household nor of his wife's household. It is conceded that he had never assumed any parental relationship to her. He had never supported her and had never presumed to exercise any custody or control over her.

█ The term "parent" primarily means one who begets a child. It usually denotes consanguinity rather than affinity. However, it is also well recognized that the term "parent" in a broad sense and under certain circumstances may include anyone who stands in a position equivalent to that of a parent. However, the appellant had never accepted any of the duties and liabilities, or exercised any of the rights of one who stood in loco parentis. In so far as any actual parental relationship was concerned, he was at the time of the offense, at least, substantially the same as an utter stranger to this minor. A stepparent, by reason of this relationship alone, has no right to the custody or control of the stepchild. Englehardt v. Yung's Heirs, 1884, 76 Ala. 534; Ex parte Flynn, 1917, 87 N.J.Eq. 413, 100 A. 861. Nor has he any duty to support the stepchild. State v. Barger, 14 Ohio App. 127; Kempson v. Goss, 1901, 69 Ark. 451, 64 S.W. 224; Capek v. Kropik, 1889, 129 Ill. 509, 21 N.E. 836; In re Besondy, 32 Minn. 385, 20 N.W. 366, 50 Am.Rep. 579. A stepfather does not merely by reason of such relationship stand in loco parentis to the stepchild. Popejoy v. Hydraulic Pressed Brick Co., 193 Mo.App. 612, 186 S.W. 1133. The assumption of the relationship is a question of intention. Howard v. United States, D.C., 2 F.2d 170; Meisner v. United States, D.C., 295 F. 866, 868; Dix v. Martin, 171 Mo.App. 266, 157 S.W. 133. Neither intention nor fulfillment is found herein. A fair consideration of the entire record impels the conclusion that the evidence is barren of any fact or circumstance which would even remotely tend to establish the relation of parent and child at the time of the offense as between the appellant and the person he kidnaped. We do not desire nor attempt to lay down any

rule which will apply to all situations where the question may arise as to the construction to be given to the exception in this statute. Presumably, each case must be decided on its own merits. Any construction should, however, not only harmonize with the context of the act, but the end in view. A construction which would lead to absurd results is to be avoided. It is our view that, even under the broadest and most latitudinarian definition or understanding of the term "parent", the appellant's relationship to this minor at the time of the offense cannot be so characterized.

■ Furthermore, the exception of this statute must be strictly construed. The burden was on the defendant to bring himself within the exception. Detroit Edison Co. v. Securities & Exchange Commission, 6 Cir., 119 F.2d 730; Schlemmer v. Buffalo, Rochester & P. R. Co., 205 U.S. 1, 27 S.Ct. 407, 51 L.Ed. 681; McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301. This he conspicuously failed to do. The trial court was right in holding that the evidence impels a finding that the appellant was not a parent of Mrs. Garner as that term is used in the exception of the act, and therefore the requested instruction was rightfully refused. No other question having been raised on this appeal, it follows that the judgment must be and is affirmed.