The Honorable Jim Lendall State Representative 10625 Legion Hut Road Mabelvale, AR 72103
Dear Representative Lendall:
This is response to your request for an opinion on the following questions:
 Does marriage of a minor, 16 years of age, affect majority status ("emancipation")? Does either "emancipation" or "majority status" of a minor, 16 years of age or older, relieve her of the notification requirement for obtaining an abortion? OR stated conversely: Does the parental notification requirement over-ride the majority status or married status of a minor 16 years or older?
These questions are asked with regard, specifically, to Act 270 of 1989, which is codified as A.C.A. 20-16-801 ET SEQ. (Supp. 1989). This act requires parental notification prior to the performance of an abortion upon an "unemancipated minor." Section 20-16-801
states:
 No abortion operation shall be performed upon an unemancipated minor, or upon a woman for whom a guardian or custodian has been appointed because of a finding of incompetency, until at least forty-eight (48) hours after written notice of the pending operation has been delivered in the manner, and subject to the exceptions, provided in this subchapter.[1]
Your questions therefore center on whether the parental notification requirement applies to a minor who is married, or whether the marriage removes her from the status of an "unemancipated minor."
It must be initially recognized that the term "unemancipated minor" is specifically defined under A.C.A. 20-16-802. Subsection (3) of this section states:
 `Unemancipated minor' means a minor who is under the care, custody, and control of her parent or parents.
A "minor" is "an individual under the age of eighteen (18) years." A.C.A. 20-16-802(2).
These definitions will, in my opinion, be controlling.[2] While the majority rule appears to be that the marriage of a minor works an emancipation, (SEE 67A C.J.S. PARENT CHILD 8b. (1978) and 43 C.J.S. INFANTS 116 (1978), we cannot conclusively state that this rule, which ordinarily applies in the law of parent and child, will necessarily be controlling for purposes of 20-16-801 ET SEQ. The rationale of those cases may, however, be helpful. The general rule in favor of emancipation upon marriage appears to be premised upon the theory that the marriage creates relations which are inconsistent with the child's subsection to the control and care of the parent. 67A C.J.S. PARENT CHILD 8b., SUPRA. Although there is a myriad of cases to this effect from other jurisdictions, our research has revealed a dearth of authority in Arkansas. In MILLER v. UNITED STATES, 123 F.2d 715 (8th Cir. 1942), the Court did state that ". . . under the laws of [the State of Arkansas] a girl under eighteen years of age, ALTHOUGH MARRIED AND THEREBY EMANCIPATED, is considered a "minor." MILLER,123 F.2d at 716 (emphasis added). That case involved the alleged kidnapping of a minor, defended upon the ground that the accused was the parent of the minor and therefore fell within an exception to the kidnapping statute. (The exception applied "in the case of a minor, [transported] by a PARENT THEREOF. . . ." 123 F.2d at 716, (emphasis added).) The Court rejected this defense, stating:
 Even though it may be assumed that, if Mrs. Garner had been a member of appellant's household, cared for and nurtured by him and in his custody and control, the relationship of stepfather and stepchild would have existed in the generally accepted usage of such terms, the evidence herein does not present such a picture. At the time of the kidnaping [sic], Mrs. Garner was living with her husband at DeQueen, Arkansas, and had been married for about three years. She had assumed a new duty as a wife with a responsibility to her husband and to her own home. She was no longer subject to the control or supervision of her mother. She was an emancipated married woman. . . . She was neither a member of appellant's household nor of his wife's household. It is conceded that he had never assumed any parental relationship to her. He had never supported her and had never presumed to exercise any custody or control over her.
It was therefore concluded that there was no relation of parent and child at the time of the kidnapping. ID. Significant for our purpose in construing the definition of an "unemancipated minor" under A.C.A. 20-16-802 is the court's emphasis upon the particular relationship in that instance. The absence of a parental relationship was based upon all of the relevant circumstances. The marriage of the minor, and her resultant emancipation (123 F.2d at 716), formed a part of the court's overall discussion which led to the conclusion that the parent-child relationship did not exist. The lack of "custody or control", which appeared to be the pivotal factor, was evidenced by the various elements of the relationship, including the marriage, the minor's assumption of new duties and responsibilities as a wife, the removal of the minor from the appellant's household, and the absence of support. MILLER, 123 F.2d at 717.
While this case is certainly factually distinct from the setting posed under A.C.A. 20-16-801 ET SEQ., it offers some authority for the proposition that the "care, custody, and control" determination (20-16-802(3)) should be based upon all of the surrounding circumstances in each instance. The court refused in the MILLER case to "lay down any rule which will apply to all situations where the question may arise as to the construction to be given to the exception in the [kidnapping] statute."123 F.2d at 718. The Court stated with regard to that statute that "[p]resumably, each case must be decided on its own merits." ID.
A similar approach should, in my opinion, apply with respect to the parental notification requirement imposed under 20-16-801 ET SEQ. (Supp. 1989). We cannot state, in the absence of judicial precedent, that the fact of marriage will in itself decide the question of whether the minor is under the care, custody, and control of her parent(s). It may reasonably be concluded, however, that the marriage of a minor is a significant factor and may, when viewed together with the attendant circumstances, be determinative.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[1] The manner of delivery of the notice is governed by A.C.A.20-16-803 (Supp. 1989). Subsection (a) provides for personal delivery to the parent by the physician or an agent. Subsection (b) states that in lieu of personal delivery, notice shall be made by "certified mail addressed to the parent at the usual place of abode of the parent, with return receipt requested and delivery restricted to the addressee." Under this subsection, delivery "shall be deemed to occur at twelve o'clock noon on the next day, subsequent to mailing, on which regular delivery takes place."
[2] It should be noted in this regard that the meaning of the term "emancipation" may vary, depending upon the setting. For instance, it has been stated that A.C.A. 9-11-502, which removes all disabilities of married women, only emancipates married women from those disabilities attendant upon their marital status; it does not relieve her of all the disabilities of minority. SEE, SCHRUM v. BOLDING, 260 Ark. 114, 121, 539 S.W.2d 415 (1976). Emancipation, as employed in the law of parent and child, generally means the freeing of a child for all the period of minority from the care, custody, control, and service of the parents. 67A C.J.S. PARENT CHILD 5 (1978). It is thus apparent that the term "emancipation" is not exact. Id.