40 F.3d 1245
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Julius SHEEK, a/k/a Mike Sheek, a/k/a Mike Presley,
Defendant-Appellant.
 No. 93-5717.
 United States Court of Appeals, Fourth Circuit.
 Submitted August 12, 1994.
Decided Nov. 2, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence. William B. Traxler, Jr., District Judge. (CR-92-435)
 John H. Hare, Assistant Federal Public Defender, Columbia, SC, for Appellant. J. Preston Strom, Jr., United States Attorney, William E. Day, II, Assistant United States Attorney, Florence, SC, for Appellee.
 D.S.C.
 AFFIRMED.
 Before HALL and MOTZ, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Michael Julius Sheek, challenges his conviction for kidnapping under 18 U.S.C. Sec. 1201, arguing that "someone who is a stepparent [of the victims] should be considered a parent within the meaning of the parental exclusion of the Federal Kidnapping Statute." He also asserts that the trial court erred in enhancing his sentence for obstruction of justice because it failed to make a finding that encompassed all the factual predicates necessary for a finding of perjury as required by United States v. Dunnigan, 113 S.Ct. 1111 (1993). We affirm.
 
 I.
 
 2
 In September of 1990, appellant married Grace Sheek, who was the biological mother of two children, Amanda Floyd and Michael York. On November 16, 1987, the South Carolina Department of Social Services had removed the children from Grace Sheek's custody and placed them with Sollie and Mary Floyd, licensed foster parents in South Carolina. On November 22, 1989, nearly ten months before appellant married Grace Sheek, a South Carolina court had terminated Grace Sheek's parental rights. Subsequently, the Floyds adopted Amanda; Michael's adoption is still pending.
 
 
 3
 On August 17, 1991, Grace Sheek, John Wallace, and Sherri Wallace abducted the children. During the abduction, John Wallace tied up the Floyds and threatened them with a revolver. The Floyds were also robbed of approximately $5,000. The group travelled to Georgia and then to Missouri. Grace Sheek and the Wallaces were arrested on August 21, 1991.
 
 
 4
 Prior to the kidnapping, Grace Sheek had not seen her children for more than a year and appellant had never met them. Appellant had spoken with them by telephone on a dozen occasions and, along with his wife, had sent them cards and gifts. According to appellant's testimony, during the spring and summer of 1991 he had looked at his wife's court papers related to termination of custody, had hired a lawyer to investigate the matter, and had contacted government agencies and law enforcement officers for information on regaining custody.
 
 
 5
 A September 2, 1992 indictment and an October 22, 1992 superseding indictment charged appellant with kidnapping in violation of 18 U.S.C. Sec. 1201, conspiracy to commit kidnapping in violation of 18 U.S.C. Sec. 371, and use of a firearm during a crime of violence and/or aiding and abetting the same in violation of 18 U.S.C. Sec. 924(c)(1) & (2). Appellant moved for dismissal of the indictment on the grounds that because he was the children's stepfather, he fell within the parental exclusion in Sec. 1201. The district court denied the motion.[1]
 
 
 6
 At his jury trial, six witnesses testified that appellant enlisted their help in, or told them about, the kidnapping scheme, helped plan the kidnapping, even marking the route from Missouri to South Carolina, gave various members of the group money for expenses, knew that Grace Sheek and the Wallaces had left Missouri to undertake the abductions, and arranged to have someone pick them up in Georgia. Appellant testified in his own behalf and denied any involvement in the kidnapping; he asserted he did not even know about the kidnapping until it was completed. The jury convicted appellant of kidnapping and conspiracy to kidnap, but acquitted him of the firearm charge. He was sentenced to seventy months imprisonment and five years of supervised release. Appellant then noted an appeal. The government moved to submit the case on briefs without oral argument. As counsel for appellant has not opposed this motion, we shall grant it.
 
 II.
 
 7
 Appellant's first contention is that because he was Amanda's and Michael's stepfather, he was exempt from prosecution under the Federal Kidnapping Statute, and the indictment against him should have been dismissed. The statute in question provides, in relevant part,
 
 
 8
 (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof ... shall be punished by imprisonment for any term of years or for life.
 
 
 9
 18 U.S.C. Sec. 1201(a) (emphasis added). Appellant asserts that the "simple fact of the common use of the terms 'stepfather' and 'stepparent' when speaking of someone in the position of defendant indicates that the defendant was considered a 'parent,' even though he was not a parent in the same sense as his wife, who was the biological parent." Thus, appellant claims that if a person can be described by a compound word, part of which is "parent," that person is exempt under the statute. He also argues that because this is a criminal statute, it should be strictly construed to give an accused fair notice of the conduct prohibited.
 
 
 10
 In Miller v. United States, 123 F.2d 715 (8th Cir.1941), rev'd on other grounds, 317 U.S. 192 (1942), the court held that the asserted stepfather of a child was not entitled to the parental exemption under Sec. 1201. The Miller court reasoned that it was the nature of the relationship that determined whether someone is considered a parent under Sec. 1201.
 
 
 11
 The term "parent" primarily means one who begets a child. It usually denotes consanguinity rather than affinity. However, it is also well recognized that the term "parent" in a broad sense and under certain circumstances may include anyone who stands in a position equivalent to that of a parent.... A stepfather does not merely by reason of such relationship stand in loco parentis to the stepchild.... The assumption of the relationship is a question of intention. Id. at 717. The stepfather in Miller had lived with the child for four months when she was less than two years old. At the time of the kidnapping, she was approximately eighteen years old and had been married for three years. She had lived away from her mother since she was twenty-two months old and "was no longer subject to the control or supervision of her mother." Id. The defendant had never supported her, had custody or control over her or "assumed any parental relationship to her." Id. Appellant argues that unlike the stepfather in Miller, he "showed every intention of establishing a relationship with his wife's children" because he spoke to them on the telephone a dozen times, sent them gifts, and spent some time working on whether his wife could regain custody of them. He also points out that the child in Miller was nearly eighteen years old and married, while the children here were both under the age of ten.
 
 
 12
 Appellant's distinctions are unconvincing. Speaking to the children, sending them some gifts, and making inquiries about regaining custody are meager grounds on which to base a parental relationship. He never met the children, never supported them, and certainly never exercised custody or control over them. There are many people who have more extensive relationships with the children of their friends, yet we doubt they would be considered "parents" under Sec. 1201. As Miller suggests, there may be circumstances in which a stepparent would fall within Sec. 1201's parental exemption, but this is not such a case. Like the Miller court, we conclude that a "fair consideration of the entire record impels the conclusion that the evidence is barren of any fact or circumstance which would even remotely tend to establish the relation of parent and child at the time of the offense." See Miller, 123 F.2d at 717.
 
 
 13
 For these reasons, the district court did not err in denying appellant's motion to dismiss the indictment.
 
 III.
 
 14
 Appellant also contends that the district court erred when it enhanced his sentence by two points for obstruction of justice.
 
 
 15
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels. United States Sentencing Commission Guidelines Manual, Sec. 3C1.1. When a defendant objects to an increase for obstruction of justice for perjury, the court "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition [set out by the court]." United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993).[2] It is "preferable" for the court to "address each element of the alleged perjury in a separate and clear finding," but it is sufficient if the court "makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Id.
 
 Here, the district court found:
 
 16
 [T]he government has proven by a preponderance of the evidence that [Sheek] perjured himself. I also specifically note for the record that I found this testimony, as did the jury, not only unbelievable, but almost incredible.
 
 
 17
 Later the court described some of the testimony that it "found to be untrue, perjury." Appellant claims that the district court erred because it did not find that he willfully falsified the testimony or that it was material. We disagree.
 
 
 18
 The court's findings were sufficient as to willfulness and lack of truthfulness. See United States v. Emenogha, 1 F.3d 473, 482 (7th Cir.1993), cert. denied, 114 S.Ct. 901 (1994) (finding that defendant's testimony was "untruthful" and "utterly incredible"). The testimony that the court described did not relate to matters about which appellant could simply be mistaken or unsure; he would know whether or not he had helped to plan the kidnapping. In addition, although the court did not expressly state that the perjured testimony was material, it clearly was. The testimony to which the court referred related to appellant's involvement in the planning of the kidnapping and his knowledge that it was taking place. If the factfinder had believed that appellant did not help plan or know about the kidnapping, it would have acquitted him. Because we can make a determination of materiality ourselves, we need not remand to the district court. United States v. Matiz, 14 F.3d 79, 84 (1st Cir.1994); United States v. Arias-Villanueva, 998 F.2d 1491, 1513 (9th Cir.1993), cert. denied, 114 S.Ct. 359 and 114 S.Ct. 573 (1993).
 
 
 19
 The district court's finding of perjury under USSG 3C1.1 was sufficient.
 
 AFFIRMED
 
 
 [1]
 The indictment against Grace Sheek, however, was dismissed because she was the children's biological parent. The government appealed, and this Court held that a biological parent whose parental rights have been severed is still a "parent" within the meaning of Sec. 1201 and therefore exempt. United States v. Sheek, 990 F.2d 150 (4th Cir.1993)
 
 
 [2]
 The Supreme court defined perjury as giving "false testimony concerning a material matter with willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Id. at 1116